Barry I. Gold, Esq., SBN: 57118
David J. Rubaum, Esq. SBN 191802
SHAFFER, GOLD & RUBAUM, LLP
12011 San Vicente Boulevard, Suite 600
Los Angeles, CA 90049-4948
Telephone:  (310) 476-9955
Facsimile:  (310) 471-0482
bgold@sgr4law.com
drubaum@sgr4law.com

Bruce Isaacs, SBN 100926
WYMAN & ISAACS LLP
5757 Wilshire Boulevard, Suite 475
Los Angeles, CA 90036
Telephone: (323) 648-4144
Facsimile: (323) 648-4133
bisaacs@wymanisaacs.com

Attorneys for Defendants,
NUTRI-VET, LLC and
VITAMIN SHOPPE INDUSTRIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| OPTIMAL PETS, INC., a California corporation, | ) CASE NO. EDCV 08-01795 MJG (AGRx) |
| Plaintiff, | ) NV'S AND VS' REPLY TO OPI'S ) OPPOSITION TO NV'S AND VS' ) RENEWED MOTION FOR JMOL POST |
| v. | ) TRIAL; NV'S AND VS' OPPOSITION TO ) OPI'S CROSS-MOTION FOR JMOL POST |
| NUTRI-VET, LLC, an Arizona limited liability company; and VITAMIN SHOPPE INDUSTRIES, INC., a New York corporation d/b/a THE VITAMIN SHOPPE, | ) TRIAL; DECLARATION OF BRUCE ) ISAACS RE EXHIBITS AND TRANSCRIPT ) OF GARMON TRIAL TESTIMONY ) ) [Re-assigned for all purposes to the Honorable |
| Defendants. | ) Marvin J. Garbis] ) |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         Defendants Nutri-Vet, LLC ("NV") and Vitamin Shoppe Industries, Inc. ("VS") hereby

3  submit this brief in reply to Plaintiff Optimal Pets, Inc.'s ("OPI") opposition to NV's and VS'

4  renewed motion for JMOL, post trial, pursuant to Rule 50 of the Federal Rules of Civil

5  Procedure and in opposition to OPI's own motion for JMOL, post trial, as follows:

6

7                    **MEMORANDUM OF POINTS AND AUTHORITIES**

8                                        **I.**

9  **OPI CONTINUES TO RUN AND HIDE FROM THE MARKET PENETRATION TEST**

10     **AND THE UNDISPUTED EVIDENCE ON THE FOUR FACTOR TEST**

11     **DEMONSTRATES THAT OPI DOES NOT HAVE SUFFICIENT MARKET**

12  **PENETRATION IN ANY GEOGRAPHICAL AREA AS A MATTER OF UNDISPUTED**

13                     **FACT AND AS A MATTER OF LAW.**

14

15         In OPI's opposition papers, it asks the Court for affirmative relief.  OPI asks the Court to

16  rule on the market penetration issue in its favor as a matter of law.  This request by OPI is most

17  revealing.

18         As OPI's opposition papers demonstrate, both OPI, on the one hand, and NV and VS, on

19  the other, agree that the issue of market penetration can be, and should be, decided by the Court,

20  post-trial, as a matter of law.  In their moving papers, NV and VS contend that this Court should

21  adjudicate the market penetration issue as a matter of undisputed fact and as a matter of law by

22  ruling that OPI has insufficient market penetration in all geographical areas.  In its

23  opposition/moving papers, OPI likewise argues that the Court should adjudicate the market

24  penetration issue as a matter of law by ruling that market penetration is an irrelevant inquiry.

25         Thus, both sides agree that this Court can, and should, decide the crucial issues of market

26  penetration by way of the cross-post trial motions pursuant to Rule 50.  In short, both sides agree

27  that the market penetration issue is ripe for determination by the Court, once and for all, at this

28  juncture of the proceedings.

1    From the outset of this litigation, and continuing through and including OPI's July 22,

2    2011 filing in connection with the cross-Rule 50 motions, OPI has done everything in its power

3    to distance itself from the market penetration test. OPI wants no part of the market penetration

4    test because OPI knows that if the Court applies the market penetration test, as it is required to

5    do under controlling law (see discussion below), it cannot possibly prevail in this case. If the

6    market penetration test is applied, as it should be, OPI ends up with no common law trademark

7    protection at all or, at most, common law trademark protection in only the Two Zip Codes

8    (defined below). Thus, in an attempt to circumnavigate the market penetration test, OPI once

9    again attempts to convince the Court that the market penetration test does not matter.

10    In short, OPI's strategy is to attempt to re-write controlling law. OPI erroneously seeks

11    to argue that the two part test already ruled upon by the Court – (1) prior use; and (2) market

12    penetration –collapses into a single test based on prior use. OPI attempts to re-write the law by

13    arguing all that matters is whether or not it used the name Optimal Pet first. OPI tries to argue

14    that it has established common law trademark rights because it is the "prior user", based on the

15    Jury's finding in response to Question 1, and that, despite failing to prove sufficient market

16    penetration in 41,998 out of the 42,000 zip codes in the United States, it nevertheless has

17    "nation-wide" common law trademark rights which preclude NV and VS from making use of the

18    Optimal Pet name *anywhere* because, as OPI argues, the name Optimal Pet is "inherently

19    distinctive" and the market penetration test is an irrelevant inquiry.

20    To the contrary, this Court has already confronted and decided this issue. This Court has

21    already ruled that the issue of common law trademark protection is controlled by a two part test,

22    prior use and market penetration, as the Jury Instruction entitled "Substantive Jury Instructions"

23    read by the Court to the Jury so demonstrates. See Jury Instructions beneath Question 1 and

24    beneath Question 2. Attached hereto as Exhibit "6" is a true and correct copy of the Jury

25    Instructions entitled "Substantive Jury Instructions".1

26    Moreover, not only does OPI continue to misstate the law, OPI asks the wrong question.

27    The question is *not* whether or not OPI is the senior user throughout the United States or whether

28

---

1    Exhibits "1" through "5" are referenced in the initial moving papers on the Rule 50 motion and in the initial
moving papers on the renewed Rule 50 motion and are attached to the Declaration of Isaacs submitted herewith.

1  or not the name Optimal Pet is inherently distinctive (suggestive vs. descriptive). *That* is an

2  incomplete inquiry that sidesteps the central question.

3      The correct question is whether or not OPI has established sufficient market penetration

4  in any geographical areas because if, but only if, it has, then, but only then, can it preclude NV

5  and VS from making use of the Optimal Pet name.

6      As set forth below, the law is clear that OPI has the right to preclude NV and VS from

7  making use of the Optimal Pet name *only* in those geographical areas in which it has established

8  sufficient market penetration.  A quick review of the law on market penetration, the law from

9  which OPI desperately seeks to run and hide, is instructive.

10      In addition, as set forth during the trial, set forth below and set forth in the moving papers

11  (both the initial moving papers and the renewed moving papers), the evidence shows as a matter

12  of undisputed fact and as a matter of law that OPI did not, and cannot, establish sufficient market

13  penetration in any geographical area.

14

15                                **II.**

16                  **THE MARKET PENETRATION TEST**

17

18      In *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 417 (1916), the United States

19  Supreme Court ruled that the trademark of a prior user should be protected from infringement

20  **only** in the geographical areas where the prior user has established a *market* for its goods.  As the

21  *Hanover Court* famously ruled:

22

23          "Since it is the trade, and not the mark, that is to be protected, a trademark

24          acknowledges no territorial boundaries of municipalities or states or nations, *but*

25          *extends to every market where the trader's goods have become known and*

26          *identified by his use of the mark.  But the mark, of itself, cannot travel to markets*

27          *where there is no article to wear the badge and no trader to offer the article.*"

28          (Emphasis added.)

---

1    In this respect, the United States Supreme Court reasoned that a common law trademark

2    was not protectable in markets in which the putative trademark holder has not sufficiently

3    penetrated the market.  If the putative trademark holder has not created sufficient good will in a

4    geographical area, he, she or it is not entitled to common law trademark protection or to preclude

5    others from using the alleged mark.

6    Relying on *Hanover*, the Third Circuit decided the seminal case of *Natural Footwear*

7    *Limited v. Hart, Schaffner & Marx*, 760 F.3d 1383 (3rd Cir. 1985) in which it ruled as follows:

8

9    "Based on that decision and review, we conclude that Roots' sales in each of the

10   other states, as evidenced by the number of customers and the value of gross

11   sales, were either so small or so sporadic **that market penetration was *de***

12   ***minimis*.  By *de minimis*, we mean that Roots achieved neither gross sales of**

13   **over $5,000 nor a total of over 50 customers for any of theses states in at least**

14   **two of the three years for which sales data were available.  When sales**

15   **activity does not exceed even a minimum threshold level, a court may**

16   **properly conclude that the market penetration sufficient to support**

17   **injunctive relief simply has not been demonstrated.**

18   (Emphasis added.)

19   *Id.*, at p. 1400.

20

21   In *Credit One Corp. v. Credit One Financial, Inc.*, 661 F.Supp.2d 1134 (C.D. Cal 2009),

22   Judge Wright of the Central District of California was confronted with a fact pattern pursuant to

23   which the senior user, an auto finance company, claimed that it had a common law trademark in

24   the name "Credit One" and therefore had the right to preclude Defendant, a national bank that

25   issues Visa credit cards (and who is now well-know for its Barbarians on vacation advertising

26   campaign) from using the Credit One name.  Despite strong facts suggesting a likelihood of

27   confusion, Judge Wright ruled that in order for the plaintiff to show that it had a valid common

28   law trademark, it had to establish two elements, prior use and market penetration.  As the court

1  stated:

3        "A party asserting common law rights must not only establish that it is in the

4  `      senior user, it must also show that it has 'legally sufficient market penetration' in

5        a certain geographic market to establish those trademark rights.  *Glow Industries,*

6        *Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D. Ca. 2002).  Sufficient market

7        penetration is determined by "examining the trademark user's volume of sales and

8        growth, number of persons buying the trademarked product in relation t the

9        number of potential purchasers, and the amount of advertising" in a given market.

10       *Id*."

11       (Emphasis added.)

12       *Credit One*, at p. 1138.

14     In *Glow Industries, Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D. Cal. 2002), Judge

15  Morrow of the Central District of California ruled as follows:

17       "Although Glow, Inc. is likely to succeed in establishing that the GLOW mark is

18       distinctive and that it is the senior user of the mark, it must also demonstrate the

19       territorial scope of its trademark use in order to establish a likelihood of success

20       on the merits.  Generally, "in the absence of federal registration, both parties have

21       the right to expand [their use of an unregistered mark] into unoccupied territory

22       and establish exclusive rights by being first in that territory.  In effect, it is a race

23       between the parties to establish customer recognition in unoccupied territory.

25       "Generally, the senior user of a mark is entitled to assert trademark rights in all

26       areas in which it has legally sufficient market penetration.  This is determined by

27       examining the trademark user's volume of sales and growth trends, the number of

28       persons buying the trademarked product in relation to the number of potential

---

1      purchasers, and the amount of advertising.  See, e.g., *Natural Footwear, Ltd. v.*

2      *Hart, Schaffner & Marx,* 760 F. 2d 1383m 1398-99 (3rd Cir. 1985)(holding that

3      the senior user had not established trademark rights outside the state of New

4      Jersey.)"

5      (Emphasis added.)

6      *Glow,* at p. 983.

7

8          In *Glow,* the court ruled that plaintiff did <u>not</u> establish sufficient market penetration to

9      confer nationwide common law trademark rights even though plaintiff had sales to consumers in

10     all 50 states, had product presence in 11 states, had advertised products in national magazines

11     and had nationwide internet availability.

12

13         In this Court's ruling on the motion for summary judgment, the Court cited *Credit One*

14     and *Glow* in stating the two-part test for a common law trademark as follows:

15

16         "A plaintiff asserting common law ownership rights in a trademark, must

17         establish (1) that it is the senior user of the mark **and** (2) legally sufficient market

18         penetration in a certain geographic area to establish ownership rights.

19         (Document No. 70, page 4 and 5 of 15.)

20

21                                    **III.**

22     **THE UNDISPUTED EVIDENCE SHOWS THAT OPI FAILED TO ESTABLISH**

23                  **SUFFICIENT MARKET PENETRATION**

24

25         OPI filed its complaint in this action on December 8, 2009.  Some 19 months later, after

26     the parties, their lawyers and the Court and its staff devoted exhaustive time, effort, energy and

27     expense to conclude this dispute through a Jury trial, the Jury in this case determined that OPI

28     had established market penetration in only two zip codes out of the 42,000 zip codes in the entire

---

1   United States over a period of 5 years and 3 months (the "63 Month Time Period"), *despite OPI*

2   *persistently claiming (to this very day) nation-wide common law trademark rights in the name*

3   *Optimal Pet.* Namely, these two zip codes were Prescott, Arizona (zip code 86305, with total

4   sales of $2,709 over the 63 Month Time Period) and Kansas City, Missouri (zip code 64113,

5   with total sales of $4,544 over the 63 Month Time Period) (the "Two Zip Codes").

6       As the Court commented on several occasions before the trial commenced, if OPI did

7   establish sufficient market penetration in any geographical area, the profits it *might* be entitled to

8   recover, if any (assuming a finding of willfulness), might be extremely low.  Consistent with the

9   Court's prophecy, a review of Trial Exhibit 567-28, attached hereto as Exhibit "4" (an Exhibit

10  also referenced in the moving papers on the renewed Rule 50 motion) confirms that VS' total

11  sales in Prescott, Arizona, zip code 86305, and in Kansas City, Missouri, zip code 64113, were

12  $0 in both locations!  Accordingly, OPI's past, and continuing, Pyrrhic efforts in this case (both

13  before and during trial) have been, and continue to be, contrary to economic common sense.

14      Beyond the Two Zip Codes, the sales OPI generated over the 63 Month Time Period in

15  the 34 remaining states and/or zip codes within those states which the Jury did not resolve by its

16  verdict do not amount to sufficient market penetration as a matter of undisputed fact and as a

17  matter of law.  See *Natural Footwear v. Hart*, 760 F.2d 1383, 1395 (3d Cir. 1985).  Indeed, as is

18  amply demonstrated below, this case cries out for and, in fact, demands that this Court end the

19  madness here and now by ruling, as it is legally empowered to do, that no reasonable Jury could

20  find legally sufficient market penetration in any geographical area.

21      In this regard, a detailed review of Trial Exhibit 575 shows the following:

22      **1.**    During the 63 Month Time Period, OPI achieved total sales of less than $75 in 15

23  states, including total sales of less than $50.11 in 12 of those states.[2]  On its face, the sales in

24  these 15 states ranged, in the aggregate, from $7.70 to $74.75 or viewed another way, ranged

25  between $.004 per day in Louisiana and $.039 per day in Vermont.  This cannot possibly amount

26  to legally sufficient market penetration as a matter of undisputed fact and/or as a matter of law.

27

28  [2]  Louisiana ($7.70), Wisconsin ($12), Indiana ($12), Illinois ($12), Massachusetts ($14.15), Kentucky ($18.80), Arkansas ($21), Montana ($24), Ohio ($27.36), Georgia ($37.25), North Carolina ($37.65), Maryland ($50.10), New Jersey ($68.05), Texas ($73), and Vermont ($74.75).

---

NV'S AND VS'S REPLY TO OPI'S OPPOSITION TO RENEWED MOTION FOR JMOL POST TRIAL;
OPPOSITON TO OPIS' CROSS-MOTION FOR JMOL POST TRIAL

2.    During the 63 Month Time Period, OPI achieved total sales in 13 states which ranged between $107.50 and $746.90, including sales of less than $583.88 in 10 of those states.[3] Once again, it is clear on its face that the aggregate sales in these 13 states ranged from $107.05 to $746.90 or, viewed another way, ranged between $.056 per day in Connecticut and $.39 per day in Oregon.  This cannot possibly amount to legally sufficient market penetration as a matter of undisputed fact and/or as a matter of law.

3.    After taking into account: (i) all of the 28 states discussed above; (ii) the 16 states for which the Jury determined there was no market penetration for lack of any sales; and (iii) the Two Zip Codes the Jury determined had sufficient market penetration, there are only 6 remaining states to consider as follows:

a.    **Missouri.**  OPI's sales in Missouri totaled $4,727.23 during the Sixty Three Month Time Period.  However, since the Jury found market penetration in Kansas City, Missouri, zip code 64113, with sales of $4,544, the remainder of sales in the state of Missouri was only $183.23 ($4,727.23 - $4544 = $183.23) which does not amount to sufficient market penetration as a matter of undisputed fact and/or as a matter of law.

b.    **California.**  OPI's sales in California, excluding PNC sales, totaled $4,673.07.  Of these sales, the highest amount OPI achieved in any zip code in California was in Long Beach, California, zip code 90803, with sales of a mere $713 over the 63 Month Time Period.  (See Trial Exhibit 567-23 and 567-24 attached hereto as Exhibit "4".)  Notably, in this geographic area, Vitamin Shoppe had *no sales* in Long Beach, California, zip code 90803! Moreover, the sales of only $713 in Long Beach, California, zip code 90803, are less than half of the amount of OPI's sales of $1,543 in Balston Spa, New York, an amount which the Jury did not find to be sufficient market penetration – as compared to the Two Zip Codes which the Jury concluded was sufficient market penetration.  For the reasons stated in NV's and VS' renewed Rule 50 motion, it is clear that no reasonable Jury could find that the sales of $713 in Long Beach, California, zip code 90803, constitute sufficient market penetration as a matter of

---

[3]   Connecticut ($107.50), Alaska ($140.15), Tennessee ($164.50), Virginia ($167.43), Florida ($210.44), South Carolina ($338.40), Michigan ($385.15), New Mexico ($403.62), Idaho ($436.80), Kansas ($545.32), Nevada ($583.88), Minnesota ($615.90), and Oregon ($746.90).

1 | undisputed fact and/or as a matter of law.

2 |   **c.    Arizona.**  OPI's sales in Arizona totaled $3,395.29 over the 63 Month

3 | Time Period.  However, since the Jury found market penetration in Prescott, Arizona, zip code

4 | 86305, with sales of $2,709, the remainder of $186.23 in sales in the state of Arizona ($3,395.29

5 | - $2,709 = $186.23) does not amount to sufficient market penetration as a matter of undisputed

6 | fact and/or as a matter of law.

7 |   **d.    Washington.**  OPI's sales in Washington total $2,665.68 over the 63

8 | Month Timer Period.  Of this amount, OPI had sales of $1,372 in Battle Ground, Washington,

9 | zip code 98604 (OPI's fourth highest zip code which the Jury did not conclude was sufficient

10 | market penetration).  Interestingly, as the undisputed evidence shows, in zip code 98604 of

11 | Battle Ground, Washington, Vitamin Shoppe had *no sales*!  (See Trial Exhibit 567-26, a true and

12 | correct copy of which is attached hereto as Exhibit "4").  OPI's next highest amount of sales in

13 | any Washington zip code was $836 in Yakama, Washington, zip code 98903, where Vitamin

14 | Shoppe likewise had *no sales*!  (See Trial Exhibit 567-27, Exhibit "4" hereto.)  Thus, no

15 | reasonable Jury could find such sales to constitute sufficient market penetration as a matter of

16 | undisputed fact or as a matter of law.

17 |   **e.    New York.**  OPI's sales in New York total $2,686.68 during the 63 Month

18 | Time Period.  Of this amount, OPI had sales of $1,543 in Balston Spa, New York, zip code

19 | 12020, where Vitamin Shoppe likewise had *no sales*!  (See Trial Exhibit 567-26, Exhibit "4"

20 | hereto).  OPI's next highest amount of sales in any New York zip code was $490 in Hanncroix,

21 | New York, zip code 12087, where Vitamin Shoppe also had *no sales*!  For the reasons stated in

22 | NV's and VS' renewed Rule 50 motion, no reasonable Jury could find that the small amount of

23 | sales in Balston Spa or Hanncroix, New York constitute sufficient market penetration as a matter

24 | of undisputed fact and/or as a matter of law.

25 |   **f.    Colorado.**  OPI's sales in Colorado total $1,048.99 during the 63 Month

26 | Time Period.  Of this amount, the highest amount of sales OPI achieved in any Colorado zip

27 | code was $284 in Lonetree, Colorado, zip code 80124, where Vitamin Shoppe likewise had *no*

28 | *sales*!  (See Trial Exhibit 567-25, Exhibit "4" hereto).  Again, no reasonable Jury could find such

NV'S AND VS'S REPLY TO OPI'S OPPOSITION TO RENEWED MOTION FOR JMOL POST TRIAL;
OPPOSITON TO OPIS' CROSS-MOTION FOR JMOL POST TRIAL

9

*de minimis* sales constitute sufficient market penetration as a matter of undisputed fact and/or as a matter of law.

Furthermore, as Scott Garmon ("Garmon") the President of OPI and the President of the Garmon Corporation himself admitted during the trial as to the issue of market penetration and the four factor test:

- Excluding PNC sales, OPI's total sales over the 63 Month Time Period $26,310.14. Garmon's Trial Testimony ("GTT"), p. 18. Attached hereto as Exhibit "7" collectively are true and correct copies of pages from Garmon's Trial Testimony.

- For example, Alaska had sales of $14.15 in 2004, $126 in 2005 and $0 in 2006, 2007, 2008 and 2009. GTT, p. 19. The Jury did not decide this issue. However, it is beyond dispute that these sales figures are de minimis as a matter of law and this Court should so rule, here and now.

- With respect to OPI's top few states, OPI did not register with the Department of Agriculture in New York, Washington, Arizona or Missouri. GTT, pp. 21 – 23. Thus, these "unlawful" sales shouldn't even count for purposes of market penetration in any event.

- Garmon did not quarrel with the accuracy of Exhibit 587 (Exhibit "2" hereto – and likewise referenced in the moving papers), the chart that showed that OPI achieved over $1,000 in sales over the 63 Month Time Period in only four zip codes or any charts present by NV and VS at trial. GTT, pp. 55 – 56. \

- Garmon agreed that the size of the retail pet supplement market was about $700 million. GTT, pp. 29 - 30. Accordingly, the sales ratio presented by NV and VS is, and was, 100% accurate. Attached hereto as Exhibit "8" is a true and correct copy of the sales ratio calculation presented by NV and VS at trial pertaining to the third factor of the four factor test for market penetration.

- Although Garmon tried to finesse the third factor at trial by arguing that his sales ratio was not de minimis because he was in a "different market", the pet

1    professionals market, on cross examination Garmon admitted that OPI sold to pet

2    professions and health food stores, pet stores and even to the ultimate consumer

3    via direct sales – and thus he was, in effect, in the retail market, not just the pet

4    professional market, and he was indeed operating a web site "in competition"

5    with the Garmon Corporations' best customers, like Petco and Pet Smart – which

6    is why Garmon kept OPI as a secret, invisible and un-known corporation – a

7    corporation which he admittedly did not mention to Chuck Francis or anyone on

8    the NASC Board.  GTT, pp. 53 – 55 and pp. 38 – 40.

9

10  •  he one national advertisement placed by OPI in Animal Wellness magazine, a

11    magazine for pet consumers and pet professionals, was placed in early 2004 and

12    no national magazine ads were placed thereafter and most of the advertising and

13    promotional efforts by OPI were conducted in the early years (2004 and 2005) of

14    the 63 Month Time Period.  GTT, pp. 46 – 51.

15  •  Garmon admitted, as he had to, that the reason to do advertising is to generate

16    sales.  GTT, p. 47 and p. 57.

17  •  OPI had no employees attend trade shows, the attendees were actually employees

18    of the Garmon Corporation and the trade show expenses were paid by the Garmon

19    Corporation.  GTT, p. 15 and 51.

20  •  OPI did not attend trade shows in 2007 or 2008.  GTT, p. 51 – 52.

21  •  Even puppy packs, a purported form of promotion (but not formal advertising as

22    required by the four factor test) was paid for by the Garmon Corporation, not OPI.

23    GTT, p. 52.

24    In sum, it is undeniably obvious from the above calculations and testimony, the

25 calculations and testimony presented at trial and Garmon's admissions at trial that OPI's sales in

26 all the locations discussed above during the 63 Month Time Period were *de minimis* and simply

27 cannot constitute sufficient market penetration as a matter of undisputed fact and/or as a matter

28 of law.

---

1    Moreover, to the extent OPI relied solely on its advertising efforts to prove market

2    penetration at trial (i.e, it ignored the first three factors of the four factor test), OPI's principals,

3    Garmon and Mr. Bookout, readily admitted that OPI abandoned those efforts between 2004 and

4    early 2006 at the latest.[4]  In addition, OPI made no effort whatsoever during the trial to introduce

5    any evidence to show: (1) how its advertising generated any sales in any particular geographical

6    area; or (2) how the ratio of its sales in any geographical area compared to the number of

7    potential customers in that area.  Accordingly, OPI's failure to meet its burden of proof with

8    regard to these issues, coupled with its abandonment of its advertising efforts, along with the fact

9    that its advertising efforts failed to generate sales in a meaningful amount, compels the

10    conclusion that OPI did not establish sufficient market penetration as a result of its advertising

11    efforts as a matter of undisputed fact and/or as a matter of law.

12

13    **IV.**

14    **NO REASONABLE JURY COULD CONCLUDE THAT EITHER**

15    **NV OR VS ADOPTED THE NAME OPTIMAL PET IN BAD FAITH**

16

17    A.    **There Was No Direct Evidence To Support A Finding Of**

18    **Willfulness**

19    Although the Court granted NV's and VS' pre-trial motion in limine to preclude any

20    evidence of the issue of willfulness in the first phase of the trial, OPI cavalierly ignored the

21    Court's order and attempted to taint the Jury by repeatedly referencing NV's and VS' failure to

22    stop using the name Optimal Pet after the cease and desist letter.  OPI made significant reference

23    to the willfulness issue, despite being ordered not to do so, during its opening statement, during

24    the direct examination of Garmon and during closing argument.

25    In addition, OPI elected to try and prove willfulness, and more particularly, that NV and

26
_____

27    4    OPI abandoned its one and only paid for national magazine advertising effort in early 2004.  Further, its
attendance at dog shows and tradeshows, where it attempted to develop a distributor base for generating sales, ended

28    by very early 2006, at the latest.  In sum, OPI abandoned all of its advertising efforts *more than 2 years before the
NV and VS adopted the use of the name Optimal Pet*, yet inappropriately and erroneously assert in the face of this
undisputed fact that its advertising efforts alone satisfy the market penetration requirements.

1   VS adopted the name Optimal Pet in bad faith by purely inferential innuendos because there was

2   *no direct or circumstantial evidence* to support a finding that the name was adopted in bad faith.

3

4       1.    <u>All of the Direct and Circumstantial Evidence Showed that NV and VS</u>

5             <u>Adopted the Name Optimal Pet Without Any Prior Knowledge of its</u>

6             <u>Existence.</u>

7

8       <u>Scott Garmon</u>.

9   Garmon admitted neither he nor anyone else acting on behalf of the Garmon Corporation

10  ever disclosed the existence of name Optimal Pets or otherwise offered the name to VS. GTT,

11  pp. 31 – 32.

12  Garmon also admitted he never disclosed the existence of the name Optimal Pets to

13  Chuck Francis or anyone else who was a member of the NASC. GTT, pp. 38 – 40.

14

15      <u>Bill Bookout</u>.

16  Mr. Bookout, a founder of OPI with Garmon and a founder of the NASC, admitted he

17  never disclosed the existence of the Optimal Pets name to Chuck Francis or anyone else

18  affiliated with the NASC.

19

20      <u>Gail Mullery</u>.

21  Ms. Mullery confirmed that neither Garmon nor anyone else on behalf of the Garmon

22  Corporation ever disclosed the existence of the Optimal Pets name or otherwise offered the name

23  to VS among the over 50 names that the Garmon Company submitted to the VS.

24  Ms. Mullery further testified she had never seen the name Optimal Pet before it was

25  submitted to her by Phoebe Desjardin, and that the first time she learned Optimal Pets was in use

26  by OPI was when VS received the cease and desist letter from OPI's counsel in September 2008.

27

28

---

1    **Phoebe Desjardin**.

2        Ms. Desjardin testified that she came up with the name among a list of 9 others which she

3    submitted to Ms. Mullery after she had a previously submitted a list of 22 names to VS.  Ms.

4    Desjardin further testified she searched all of the names she proposed to VS on Google and the

5    USPTO before sending them to Ms. Mullery and that, in the case of Optimal Pet, she did not find

6    any other conflicting use.  Ms. Desjardin also testified that she knew that any name she

7    submitted to VS which it approved would have to be searched and cleared for use by NV's

8    trademark counsel, Stephen Nipper, or it could not be used.

9        Finally, Ms. Desjardin testified she had never seen the name Optimal Pet on the NASC

10   member section, had never been told of the existence of OPI by Garmon and first learned of

11   OPI's use of the Optimal Pets name after Nutri-Vet received the cease and desist letter from

12   OPI's attorney in September 2008.

13

14   **Dr. Phil Brown**.

15       Dr. Brown testified he submitted the name Optimal Pet to NV's trademark counsel, Mr.

16   Nipper, along with several other names, for the purpose of having Mr. Nipper search them and

17   confirm in writing whether such names were available and could be registered as a federal

18   trademark.  Dr. Brown also testified that he did not care which name VS ultimately selected from

19   the many private label names that were proposed by NV.

20       Dr. Brown further testified that Mr. Nipper did send him with a written opinion letter

21   (Trial Exhibit 547, a true and correct copy of which is attached hereto as Exhibit "9") which set

22   forth his legal opinion that the name Optimal Pet was available and probably could be registered

23   as a federal trademark and that NV and VS relied on Mr. Nipper's opinion just as NV had done

24   on several previous occasions when Mr. Nipper performed the same exact work which resulted

25   in NV receiving formal trademark registration for other names Mr. Nipper had searched and

26   approved.

27       Finally, Dr. Brown testified that neither Garmon nor Mr. Bookout had ever disclosed the

28   existence of the Optimal Pets name or OPI to him and that the first time he learned the name

1  Optimal Pets was in use by OPI was when NV received the cease and desist letter in September

2  2008.

3        The fact that NV and VS sought out a legal opinion from a trademark attorney in order to

4  clear the name "Optimal Pet" is indisputable evidence that NV and VS acted in good faith.

5  Moreover, it was reasonable for NV and VS to rely on the written opinion of their attorney,

6  which further demonstrates their good faith.  Even Garmon admitted at trial that he relies on the

7  opinions of his attorney.  GTT, pp. 34 and 52 – 53.

8

9        **Stephen Nipper**.

10       Mr. Nipper testified he searched the name Optimal Pet in the federal , state and common

11  law data bases and that an internet search was part of his standard "play book" and that he then

12  sent Dr. Brown his written opinion letter which confirmed that the name was available and

13  probably could be registered as a federal trademark.

14

15       In short, there was not one witness who testified at trial that either NV or VS had any

16  knowledge of the name Optimal Pet when it was adopted or at any time thereafter before OPI's

17  attorney sent the cease and desist letter.

18       Moreover, despite a plethora of emails between Ms. Mullery and Ms. Desjardin, Dr.

19  Brown and Ms. Desjardin and Dr. Brown and Mr. Nipper, there is not one document in this case

20  which shows NV or VS adopted the name Optimal Pet with knowledge of its use by OPI.

21

22  B.    **The Entirely Inferential "Evidence" OPI Relied on to Attempt to Prove Bad**

23       **Faith Was Meritless And Unsubstantiated by any Credible Evidence and the**

24       **Court Should Find Good Faith as a Matter of Undisputed Fact and/or as a**

25       **Matter of Law**.

26

27  1.    **Competitive Intelligence**

28       In his opening statement, Mr. Holley claimed on behalf of OPI that Ms. Desjardin had

---

1   engaged in competitive intelligence which he stated would show that NV adopted the name with

2   knowledge of its existence.  In the trial, Ms. Desjardin did acknowledge that, in general, as part

3   of her job duties, she did perform some competitive intelligence.  However, OPI's counsel *never*

4   *asked Ms. Desjardin* if she had performed competitive intelligence *in this instance* or if she had

5   discovered the existence of OPI (a company generating barely over $5,000 per year in sales and

6   who had ended virtually all of its advertising efforts over two years before she secured the

7   business relationship with VS) by reason of conducting competitive intelligence.

8          In other words, OPI did nothing more than float this trial balloon which was never

9   substantiated by any tangible evidence.  Such non-evidence is not direct evidence and it does not

10  rise to level of circumstantial evidence either.  Rather, OPI tried the case on pure speculation and

11  innuendo.  In short, there was no reliable evidence which showed Ms. Desjardin must have

12  somehow learned about OPI from the competitive intelligence she supposedly conducted in this

13  instance.

14

15         **2.**     **Gail Mullery Must Have Discovered the Name Because She Was a Self-**

16                 **Described "Google Queen"**

17         Similarly, OPI tried to convince the Jury that because Ms. Mullery jokingly referred to

18  herself as a "Google Queen" in her deposition, this meant she must have discovered the existence

19  of OPI by Googling Optimal Pet.  Of course, this non-evidentiary surmise completely ignores

20  Ms. Mullery's actual testimony in which she stated under oath that she did not search for the

21  name and did not learn it was in use by OPI until VS received the cease and desist letter.

22

23         **3.**     **NV and VS Must Have Discovered The Existence of OPI Because of a**

24                 **Sample "Mock-up" Brochure Which Contained The Domain Name**

25                 **"Optimlpet.com"**

26         Again, during its opening statement, OPI floated the notion, based on innuendo and

27  unsupported by any evidence at trial, that NV or VS must have searched for and discovered the

28  existence of optimalpet.com because, shortly after it agreed to adopt the name, NV and VS

NV'S AND VS'S REPLY TO OPI'S OPPOSITION TO RENEWED MOTION FOR JMOL POST TRIAL; OPPOSITON TO OPIS' CROSS-MOTION FOR JMOL POST TRIAL

16

1    created a "mock-up" brochure which had a domain name optimlpet.com in a draft brochure it

2    never

3    ended up using.[5]

4         During the trial, OPI never did follow up on this inference regarding the draft brochure

5    by introducing any evidence to substantiate it.  OPI just argued it, without an evidentiary bases.

6         All of the foregoing innuendo evidence OPI relied upon to prove willfulness, and

7    specifically, that NV and VS adopted the name Optimal Pet in bad faith, completely lacked

8    evidentiary support, credibility and was unsubstantiated by any tangible facts sufficient to show

9    bad faith by a preponderance of the evidence, or at all.  As the Court knows, the Jury vote was 11

10   to 1 in favor of good faith (with the one jury member who voted for bad faith, Juror No. 12, a

11   former employee of JR Reynolds).  11 for 1 on good faith is far, far away from the 0 to 12

12   verdict that OPI must attain to achieve a finding of bad faith.

13        It is respectfully submitted that the record in this case makes clear that no reasonable Jury

14   could find that NV or VS adopted the name Optimal Pet in bad faith or, as set forth in the

15   moving papers, continued to use it in bad faith, after the cease and desist letter, given that the

16   Jury already found it NV's and VS' favor on 16 states and given the fact that the cease and desist

17   letter asserted nationwide trademark rights "throughout the United States", a finding which has

18   already been proven *adverse* to OPI.  Accordingly, it is respectfully submitted the Court should,

19   for the reasons set forth herein as well as those set forth in the initial moving papers and the

20   renewed moving papers, adjudicate that OPI cannot establish the issue of willfulness on the part

21   of NV and VS as a matter of undisputed fact and as a matter of law.

22

23

24

25   5    It should be noted that if the Court or any user types the url www.optimalpet.com into its computer's search

26   engine, even as of today, it would lead to a site which says "Welcome To Pet Center.  © 2008 Pinogy Corp./360Pe."
     Pinogy is not OPI.  Pinogy is not NV or VS either.  In other words, OPI's argument the NV and VS would have

27   found optimalpets.com by searching optimalpet.com is negated by the fact that a third company, Pinogy, has used
     the same optimalpet.com website since 2008.  Notably, OPI has not sued the Pinogy company for trademark

28   infringement.  Rather, Garmon only sued his hated rival, Chuck Francis of NV, and VS, the company that did not
     give him the private label business.  Attached hereto as Exhibit "10" is a true and correct copy of a printout from the
     Pinogy web site, an undisputed fact of which this Court may take judicial notice.

1

## V.

## OPI'S CROSS-MOTION PURSUANT TO RULE 50 IS UNTIMELY, PROCEDURALLY DEFECTIVE AND SHOULD BE SUMMARILY DENIED

By seeking affirmative relief in its opposition to NV's and VS' renewed Rule 50 motion, OPI has, in essence, attempted to make its own post trial Rule 50 motion. However, OPI's belated Rule 50 motion is improper and should not be considered by the Court because OPI is not entitled to file such a motion. In particular, in order to preserve the right to make a *post-trial* motion for JMOL under Rule 50(b), a timely and proper pre-verdict motion for JMOL (before submission of the case to the jury) *must* be made. *See* FRCP 50(a)(2)(b); Adv. Comm. Notes to 2006 Amendment to FRCP 50(b); see also *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F3d 1075, 1081, 1083 (9th Cir. 2009) (district court erred in entertaining Rule 50(b) motion because defendant failed to timely file Rule 50(a) motion). While OPI did make a pre-verdict Rule 50 motion, that motion was limited to the issue of likelihood of confusion and the law is clear that a party cannot raise arguments in a post-trial Rule 50(b) motion that it did not raise in its pre-verdict Rule 50(a) motion. *Freund v. Nycomed Amersham*, 347 F3d 752, 761 (9th Cir. 2003) (post-verdict JMOL motion on punitive damages award precluded because defendant did not raise malice issue in its pre-verdict motion).

Accordingly, based on these procedural defects, OPI's belated Rule 50 motion should be summarily denied.

## VI.

## CONCLUSION

Just as this Court exercised its power and discretion to grant OPI's JMOL on the issue of likelihood of confusion against NV and VS, it can, and should, exercise that same power and discretion here by granting Defendants' Rule 50 Motion as follows:

(1)     The Court should adjudicate the issue of market penetration by ruling, based on specific findings, that no reasonable Jury could find market penetration: (i) anywhere in the

NV'S AND VS'S REPLY TO OPI'S OPPOSITION TO RENEWED MOTION FOR JMOL POST TRIAL; OPPOSITON TO OPIS' CROSS-MOTION FOR JMOL POST TRIAL

18

1  United States, including the Two Zip Codes; or, alternatively (ii) in any of the 34 remaining

2  states or zip codes within those states in which the Jury was unable to reach a unanimous

3  decision.

4         (2)     The Court should also adjudicate the issue of willfulness, and rule that neither NV

5  nor VS acted willfully in adopting the name Optimal Pet or in continuing to use the name

6  Optimal Pet after the cease and desist letter which asserted nation-wide trademark rights

7  "throughout the United States."

8         (3)     Based on these findings, the Court should rule that OPI is entitled to no damages

9  whatsoever.

10        (4)     Based on these findings, the Court should rule that OPI is entitled to no injunctive

11 relief whatsoever or, in the alternative, should rule that OPI is entitled to injunctive relief only in

12 the Two Zip Codes.

13 In short, justice would be well served by this Court granting Defendants' Rule 50 motion and

14 bringing this matter to an end, once and for all.  The economics of this case do not warrant a

15 retrial on any issue.

16

17 Dated:  July 27, 2011                           Respectfully submitted,

18                                                 SHAFFER, GOLD & RUBAUM, LLP

19                                                         -and-

20                                                 WYMAN & ISAACS LLP

21

22                                                 By:/s/Bruce Isaacs

23                                                     BARRY I. GOLD, ESQ.

24                                                     BRUCE ISAACS, ESQ.

25

26

27

28

---

NV'S AND VS'S REPLY TO OPI'S OPPOSITION TO RENEWED MOTION FOR JMOL POST TRIAL;
OPPOSITON TO OPIS' CROSS-MOTION FOR JMOL POST TRIAL

19

# DECLARATION OF BRUCE ISAACS

I, BRUCE ISAACS, hereby declare as follows:

1.　　I am an attorney licensed to practice law in the State of California and before the United States District Court for the Central District of California. I am a partner in the law firm of Wyman & Isaacs LLP, the co-attorneys of record for Defendants Nutri-Vet, LLC ("NV") and Vitamin Shoppe Industries, Inc. ("VS") along with Shaffer, Gold & Rubaum.

2.　　I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I would and could competently testify to these facts under oath.

3.　　Attached hereto as Exhibit "1" is a true and correct highlighted copy of Trial Ex. 575. This exhibit is referenced in the initial moving papers in support of the Rule 50 motion, in the initial moving papers in support of the renewed Rule 50 motion and in this reply brief.

4.　　Attached hereto as Exhibit "2" is a true and correct highlighted copy of Trial Ex. 587. For the Court's ease of reference, I have added, in my handwriting, the names of the cities referenced on this exhibit and their corresponding zip codes. This exhibit is referenced in the initial moving papers in support of the Rule 50 motion, in the initial moving papers in support to the renewed Rule 50 motion and in this reply brief.

5.　　Attached hereto as Exhibit "3" is a true and correct copy of Trial Ex. 583. This exhibit is referenced in the initial moving papers in support of the Rule 50 motion.

6.　　Attached hereto as Exhibit "4" is a true and correct highlighted copy of Trial Ex. 567 – 23 through 567 - 40. This exhibit is referenced in the initial moving papers in support of the renewed Rule 50 motion and in this reply brief.

7.　　Attached hereto as Exhibit "5" is a true and correct highlighted copy of Trial Ex. 53, the cease and desist letter. This exhibit is referenced in the initial moving papers in support of the renewed Rule 50 motion and in this reply brief.

8.　　Attached hereto as Exhibit "6" is a true and correct highlighted copy of the Substantive Jury Instructions relating to Questions 1, 2, 3 and 4 presented to the Jury by the Court. These Substantive Jury Instructions are referenced in this reply brief.

9.     Attached hereto as Exhibit "7" are true and correct highlighted excerpts from Scott Garmon's trial testimony.  These trial testimony excerpts are referenced in this reply brief.

10.     Attached hereto as Exhibit "8" is a true and correct copy of the Sales Ratio chart relating to factor 3 of the market penetration test which was shown to the Jury during opening statement, during the direct examination of the financial expert Bruce Ross and on closing argument.  This Sales Ratio chart is referenced in this reply brief.

11.     Attached hereto as Exhibit "9" is a true and correct highlighted copy of Trial Ex. 547, Mr. Nipper's written opinion letter that the name Optimal Pet is probably available for registration as a federal trademark.  This exhibit is referenced in this reply brief.

12.     Attached hereto as Exhibit "10" is a true and correct copy of a print out from the internet, dated July 25, 2011, which I obtained by going to the www.optimalpet.com website. This website was referenced during the cross examination of OPI's expert, Mr. Rappaport.  The Pinogy Corp. is not connected with OPI, nor is it connected with NV or VS.  This exhibit is referenced in the reply brief and NV and VS hereby request that the Court take judicial notice of it.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of July, 2011, at Los Angeles, California.

/s/Bruce Isaacs
BRUCE ISAACS

Legal Tabs Co. 1-800-322-3022

Recycled  Stock #EX-5-B

# EXHIBIT  1

Optimal Pets, Inc. v. Nutri-Vet, LLC, et al.

## OPTIMAL PETS, INC.

### Sales by State

| | State | | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | Total $ | | # Involces | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MISSOURI | MO | - | - | 662.28 | 1,084.20 | 1,888.69 | 1,092.56 | 4,727.73 | 18.0% | 13 | 4.2% |
| 2 | CALIFORNIA | CA | 755.40 | 1,810.68 | 939.11 | 804.58 | 222.00 | 142.10 | 4,673.87 | 17.8% | 96 | 31.0% |
| 3 | ARIZONA | AZ | - | 337.02 | 960.42 | 958.06 | 1,099.29 | 40.50 | 3,395.29 | 12.9% | 33 | 10.6% |
| 4 | WASHINGTON | WA | 327.98 | 664.50 | 896.70 | 540.50 | 389.00 | 47.00 | 2,865.68 | 10.9% | 18 | 5.8% |
| 5 | NEW YORK | NY | 120.00 | 67.60 | 1,100.70 | 759.40 | 569.48 | 69.50 | 2,686.68 | 10.2% | 21 | 6.8% |
| 6 | COLORADO | CO | 385.55 | 186.00 | 256.20 | 109.14 | 78.60 | 33.50 | 1,048.99 | 4.0% | 24 | 7.7% |
| 7 | OREGON | OR | 67.20 | 144.20 | 164.50 | 141.00 | 230.00 | - | 746.90 | 2.8% | 9 | 2.9% |
| 8 | MINNESOTA | MN | - | - | - | 558.90 | 57.00 | - | 615.90 | 2.3% | 2 | 0.6% |
| 9 | NEVADA | NV | - | 133.48 | 149.00 | 301.40 | - | - | 583.88 | 2.2% | 13 | 4.2% |
| 10 | KANSAS | KS | - | - | - | 33.60 | 511.72 | - | 545.32 | 2.1% | 5 | 1.6% |
| 11 | IDAHO | ID | 394.80 | - | - | - | 42.00 | - | 436.80 | 1.7% | 2 | 0.6% |
| 12 | NEW MEXICO | NM | 346.02 | 45.60 | - | - | 12.00 | - | 403.62 | 1.5% | 7 | 2.3% |
| 13 | MICHIGAN | MI | 197.10 | 31.60 | 57.50 | 33.50 | 65.45 | - | 385.15 | 1.5% | 14 | 4.5% |
| 14 | SOUTH CAROLINA | SC | 338.40 | - | - | - | - | - | 338.40 | 1.3% | 2 | 0.6% |
| 15 | FLORIDA | FL | 178.60 | - | - | 31.84 | - | - | 210.44 | 0.8% | 4 | 1.3% |
| 16 | VIRGINIA | VA | 104.88 | - | 14.15 | 48.40 | - | - | 167.43 | 0.6% | 4 | 1.3% |
| 17 | TENNESSEE | TN | - | - | - | - | 117.50 | 47.00 | 164.50 | 0.6% | 3 | 1.0% |
| 18 | ALASKA | AK | 14.15 | 126.00 | - | - | - | - | 140.15 | 0.5% | 2 | 0.6% |
| 19 | CONNECTICUT | CT | 84.00 | - | - | 23.50 | - | - | 107.50 | 0.4% | 2 | 0.6% |
| 20 | VERMONT | VT | - | 67.30 | - | - | - | 7.45 | 74.75 | 0.3% | 2 | 0.6% |
| 21 | TEXAS | TX | 33.00 | - | 40.00 | - | - | - | 73.00 | 0.3% | 3 | 1.0% |
| 22 | NEW JERSEY | NJ | 42.13 | - | - | - | - | 25.92 | 68.05 | 0.3% | 2 | 0.6% |
| 23 | MARYLAND | MD | - | 50.10 | - | - | - | - | 50.10 | 0.2% | 3 | 1.0% |
| 24 | NORTH CAROLINA | NC | - | - | - | - | 37.65 | - | 37.65 | 0.1% | 2 | 0.6% |
| 25 | GEORGIA | GA | - | 23.10 | - | - | 14.15 | - | 37.25 | 0.1% | 3 | 1.0% |
| 26 | OHIO | OH | 27.36 | - | - | - | - | - | 27.36 | 0.1% | 1 | 0.3% |
| 27 | MONTANA | MT | - | - | 24.00 | - | - | - | 24.00 | 0.1% | 1 | 0.3% |
| 28 | ARKANSAS | AR | - | - | - | - | 21.00 | - | 21.00 | 0.1% | 1 | 0.3% |
| 29 | KENTUCKY | KY | 18.80 | - | - | - | - | - | 18.80 | 0.1% | 1 | 0.3% |
| 30 | MASSACHUSETTS | MA | 14.15 | - | - | - | - | - | 14.15 | 0.1% | 1 | 0.3% |
| 31 | ILLINOIS | IL | - | 12.00 | - | - | - | - | 12.00 | 0.0% | 1 | 0.3% |
| 32 | INDIANA | IN | - | - | 12.00 | - | - | - | 12.00 | 0.0% | 1 | 0.3% |
| 33 | WISCONSIN | WI | - | - | 12.00 | - | - | - | 12.00 | 0.0% | 2 | 0.6% |
| 34 | LOUISIANA | LA | - | 7.70 | - | - | - | - | 7.70 | 0.0% | 1 | 0.3% |
| 35 | ALABAMA | AL | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 36 | DELAWARE | DE | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 37 | HAWAII | HI | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 38 | IOWA | IA | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 39 | MAINE | ME | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 40 | MISSISSIPPI | MS | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 41 | NORTH DAKOTA | ND | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 42 | NEBRASKA | NE | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 43 | NEW HAMPSHIRE | NH | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 44 | OKLAHOMA | OK | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 45 | PENNSYLVANIA | PA | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 46 | RHODE ISLAND | RI | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 47 | SOUTH DAKOTA | SD | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 48 | UTAH | UT | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 49 | WEST VIRGINIA | WV | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 50 | WYOMING | WY | - | - | - | - | - | - | - | 0.0% | 0 | 0.0% |
| 51 | | | | | | | | | | | | |
| 52 | UNKNOWN | ? | 235.15 | 1,340.95 | - | - | - | - | 1,576.10 | 6.0% | 11 | 3.5% |
| 53 | | | | | | | | | | | | |
| 54 | TOTAL | | $ 3,684.67 | $ 5,047.83 | $ 5,288.56 | $ 5,428.02 | $ 5,355.53 | $ 1,505.53 | $ 26,310.14 | 100.0% | 310 | 100.0% |

Bruce L. Ross & Company

Page 1 of 1

EXHIBIT 575-1

**EXHIBIT 2**

OPI Sales By Zip Code
Sales From 2004 – 2009 Over $1,000

Balston Spa, New York ZIP = 12020

Kansas City, Missouri ZIP = 64113

Prescott, Arizona ZIP = 86305

Battle Ground, Washington ZIP = 98604

EXHIBIT 587-1

**EXHIBIT 3**



**OPI Sales By State (2004 – 2009)**

EXHIBIT 583-1

**EXHIBIT 4**

OPTIMAL PETS, INC. V. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF OPTIMAL PETS, INC. SALES
### Comparison to Vitamin Shoppe Sales Within Same Zip Codes

OP-8

| | City | State | Zip | Optimal Pets Sales ($) 1/2004 through 3/2009 | Overlapping Vitamin Shoppe Sales ($) 8/2008 through 7/2010 |
|---|---|---|---|---|---|
| 1 | Thornton | CO | 80233 | $ 89 | $ 1,756 |
| 2 | Manhattan Beach | CA | 90266 | 240 | 1,696 |
| 3 | Richmond | VA | 23235 | 45 | 1,482 |
| 4 | Royal Oak | MI | 48073 | 12 | 1,319 |
| 5 | West Melbourne | FL | 32904 | 32 | 1,124 |
| 6 | Denver | CO | 80246 | 40 | 1,044 |
| 7 | Kansas City | MO | 64154 | 42 | 926 |
| 8 | Overland Park | KS | 66210 | 84 | 894 |
| 9 | New York | NY | 10023 | 120 | 705 |
| 10 | Rockville | MD | 20852 | 42 | 699 |
| 11 | Olathe | KS | 66062 | 461 | 309 |
| 12 | Portage | MI | 49002 | 32 | 186 |
| 13 | | | | | |
| 14 | **Subtotal - Matching Zip Codes** | | | **$ 1,239** | **$ 12,139** |
| 15 | | | | 4.7% | |
| 16 | | | | | |
| 17 | Sterling | AK | 99672 | 126 | - |
| 18 | Wasilla | AK | 99654 | 14 | - |
| 19 | Bella Vista | AR | 72714 | 21 | - |
| 20 | Paulden | AZ | 86334 | 265 | - |
| 21 | Phoenix | AZ | 85023 | 14 | - |
| 22 | Prescott | AZ | 86301 | 24 | - |
| 23 | Prescott | AZ | 86303 | 76 | - |
| 24 | Prescott | AZ | 86305 | 2,709 | - |
| 25 | Scottsdale | AZ | 85254 | 190 | - |
| 26 | Surprise | AZ | 85374 | 24 | - |
| 27 | Tempe | AZ | 85284 | 24 | - |
| 28 | Tucson | AZ | 85704 | 53 | - |
| 29 | Tucson | AZ | 85718 | 18 | - |
| 30 | ? | CA | ? | 325 | - |
| 31 | Alta Loma | CA | 91701 | 39 | - |
| 32 | Anaheim | CA | 92802 | 242 | - |
| 33 | Anaheim | CA | 92807 | 160 | - |
| 34 | Apple Valley | CA | 92307 | 455 | - |

**EXHIBIT 567-23**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF OPTIMAL PETS, INC. SALES
### Comparison to Vitamin Shoppe Sales Within Same Zip Codes

OP-8

| | City | State | Zip | Optimal Pets Sales ($) 1/2004 through 3/2009 | Overlapping Vitamin Shoppe Sales ($) 8/2008 through 7/2010 |
|---|---|---|---|---|---|
| 35 | Auburn | CA | 95602 | 12 | - |
| 36 | Big Bear City | CA | 92314 | 20 | - |
| 37 | Carlsbad | CA | 92011 | 51 | - |
| 38 | Chula Vista | CA | 91910 | 50 | - |
| 39 | Corona | CA | 92879 | 42 | - |
| 40 | Corona | CA | 92880 | 34 | - |
| 41 | Corona | CA | 92882 | 15 | - |
| 42 | Escondido | CA | 92029 | 80 | - |
| 43 | Fallbrook | CA | 92028 | 218 | - |
| 44 | Garden Grove | CA | 92845 | 209 | - |
| 45 | Hemet | CA | 92544 | 52 | - |
| 46 | Inyokern | CA | 93527 | 20 | - |
| 47 | Kelseyville | CA | 95451 | 20 | - |
| 48 | Lakeport | CA | 95453 | 34 | - |
| 49 | Lakeside | CA | 92040 | 188 | - |
| 50 | Long Beach | CA | 90803 | 713 | - |
| 51 | Los Angeles | CA | 90068 | 12 | - |
| 52 | Monterey Park | CA | 91755 | 11 | - |
| 53 | Murrietta | CA | 92563 | 206 | - |
| 54 | Nuevo | CA | 92567 | 79 | - |
| 55 | Pear Blossom | CA | 93553 | 120 | - |
| 56 | Perris | CA | 92570 | 20 | - |
| 57 | Perris | CA | 92571 | 77 | - |
| 58 | Rancho Cucamonga | CA | 91730 | 97 | - |
| 59 | Riverside | CA | 92501 | - | - |
| 60 | Riverside | CA | 92505 | 38 | - |
| 61 | Riverside | CA | 92509 | 206 | - |
| 62 | Rowland Heights | CA | 91748 | 197 | - |
| 63 | San Diego | CA | 92120 | 34 | - |
| 64 | San Diego | CA | 92129 | 19 | - |
| 65 | San Diego | CA | 92130 | 24 | - |
| 66 | San Diego | CA | 92154 | 38 | - |
| 67 | San Jose | CA | 95148 | 30 | - |
| 68 | Solana Beach | CA | 92075 | 24 | - |
| 69 | Torrance | CA | 90504 | 42 | - |

**EXHIBIT 567-24**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF OPTIMAL PETS, INC. SALES
### Comparison to Vitamin Shoppe Sales Within Same Zip Codes

OP-8

| | City | State | Zip | Optimal Pets Sales ($) 1/2004 through 3/2009 | Overlapping Vitamin Shoppe Sales ($) 8/2008 through 7/2010 |
|---|---|---|---|---|---|
| 70 | Wilmington | CA | 90744 | 13 | - |
| 71 | Woodland Hills | CA | 91364 | 168 | - |
| 72 | Brighton | CO | 80603 | 34 | - |
| 73 | Cotopaxi | CO | 81223 | 106 | - |
| 74 | Denver | CO | 80218 | 34 | - |
| 75 | Denver | CO | 80219 | 42 | - |
| 76 | Denver | CO | 80224 | 67 | - |
| 77 | Englewood | CO | 80113 | 21 | - |
| 78 | Franktown | CO | 80116 | 34 | - |
| 79 | Lafayette | CO | 80026 | 64 | - |
| 80 | Lone Tree | CO | 80124 | 284 | - |
| 81 | Monument | CO | 80132 | 12 | - |
| 82 | Pueblo | CO | 81008 | 19 | - |
| 83 | Trinidad | CO | 81082 | 34 | - |
| 84 | Westminster | CO | 80260 | 171 | - |
| 85 | Sterling | CT | 06377 | 84 | - |
| 86 | Stratford | CT | 06614 | 24 | - |
| 87 | Ellenton | FL | 34222 | 34 | - |
| 88 | Lutz | FL | 33558 | 64 | - |
| 89 | Venice | FL | 34292 | 81 | - |
| 90 | Canton | GA | 30115 | 14 | - |
| 91 | Guyton | GA | 31312 | 23 | - |
| 92 | Boise | ID | 83706 | 42 | - |
| 93 | Moscow | ID | 83843 | 395 | - |
| 94 | Chicago | IL | 60617 | 12 | - |
| 95 | Vernon | IN | 47265 | 12 | - |
| 96 | Louisville | KY | 40243 | 19 | - |
| 97 | New Orleans | LA | 70130 | 8 | - |
| 98 | Webster | MA | 01570 | 14 | - |
| 99 | College Park | MD | 20740 | 8 | - |
| 100 | Birmingham | MI | 48009 | 24 | - |
| 101 | Farmington Hill | MI | 48331 | 94 | - |
| 102 | Grand Rapids | MI | 49506 | 20 | - |
| 103 | Grosse Pointe Shores | MI | 48236 | 32 | - |
| 104 | Lansing | MI | 48912 | 172 | - |

BRUCE L. ROSS & COMPANY

**EXHIBIT 567-25**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF OPTIMAL PETS, INC. SALES
### Comparison to Vitamin Shoppe Sales Within Same Zip Codes

OP-8

| | City | State | Zip | Optimal Pets Sales ($) 1/2004 through 3/2009 | Overlapping Vitamin Shoppe Sales ($) 8/2008 through 7/2010 |
|---|---|---|---|---|---|
| 105 | Troy | MI | 48085 | - | - |
| 106 | Plymouth | MN | 55447 | 616 | - |
| 107 | Kansas City | MO | 64113 | 4,454 | - |
| 108 | Lees Summit | MO | 64064 | 231 | - |
| 109 | Missoula | MT | 59801 | 24 | - |
| 110 | Reidsville | NC | 27320 | 38 | - |
| 111 | Farmingdale | NJ | 07727 | 42 | - |
| 112 | Hamburg | NJ | 07419 | 26 | - |
| 113 | Los Lunas | NM | 87031 | 32 | - |
| 114 | Rio Rancho | NM | 87144 | 360 | - |
| 115 | Santa Fe | NM | 87506 | 12 | - |
| 116 | Fallon | NV | 89406 | 14 | - |
| 117 | Fernley | NV | 89408 | 12 | - |
| 118 | Minden | NV | 89423 | 42 | - |
| 119 | Sparks | NV | 89436 | 516 | - |
| 120 | Balston Spa | NY | 12020 | 1,543 | - |
| 121 | Fort Edward | NY | 12828 | 191 | - |
| 122 | Hanncroix | NY | 12087 | 490 | - |
| 123 | Schenectady | NY | 12303 | 60 | - |
| 124 | Wading River | NY | 11792 | 68 | - |
| 125 | Wilton | NY | 12831 | 216 | - |
| 126 | Berea | OH | 44017 | 27 | - |
| 127 | Portland | OR | 97212 | 67 | - |
| 128 | Portland | OR | 97213 | 680 | - |
| 129 | Warrenville | SC | 29851 | 338 | - |
| 130 | Clarksville | TN | 37043 | 165 | - |
| 131 | Belville | TX | 77418 | - | - |
| 132 | Kingwood | TX | 77345 | 40 | - |
| 133 | Splendora | TX | 77372 | 33 | - |
| 134 | Fairfax Station | VA | 22039 | 14 | - |
| 135 | Gum Spring | VA | 23065 | 60 | - |
| 136 | Newport News | VA | 23606 | 48 | - |
| 137 | Colchester | VT | 05446 | 7 | - |
| 138 | South Royalton | VT | 05068 | 67 | - |
| 139 | Battle Ground | WA | 98604 | 1,372 | - |

BRUCE L. ROSS & COMPANY                                    PAGE 4 OF 5

## EXHIBIT 567-26

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF OPTIMAL PETS, INC. SALES
### Comparison to Vitamin Shoppe Sales Within Same Zip Codes

OP-8

| | City | State | Zip | Optimal Pets Sales ($) 1/2004 through 3/2009 | | Overlapping Vitamin Shoppe Sales ($) 8/2008 through 7/2010 |
|---|---|---|---|---|---|---|
| 140 | Bellingham | WA | 98229 | 24 | | - |
| 141 | Vancouver | WA | 98664 | 47 | | - |
| 142 | Vancouver | WA | 98665 | 47 | | - |
| 143 | Vancouver | WA | 98685 | 494 | | - |
| 144 | Wapato | WA | 98951 | 47 | | - |
| 145 | Yakama | WA | 98903 | 836 | | - |
| 146 | Spooner | WI | 54801 | 12 | | - |
| 147 | White Lake | WI | 54491 | - | | - |
| 148 | ? | ? | ? | 1,576 | | - |
| 149 | | | | | | |
| 150 | Subtotal - Non- Matching Zip Codes | | | $ 25,071 | $ | - |
| 151 | | | | 95.3% | | |
| 152 | | | | | | |
| 153 | TOTAL | | | $ 26,310 | $ | 12,139 |
| 154 | | | | 100.0% | | |

EXHIBIT 567-27

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 1 | Olathe | KS | 66062 | $ 309 | $ 461 |
| 2 | Manhattan Beach | CA | 90266 | 1,696 | 240 |
| 3 | New York | NY | 10023 | 705 | 120 |
| 4 | Northglenn | CO | 80233 | 1,756 | 89 |
| 5 | Overland Park | KS | 66210 | 894 | 84 |
| 6 | Richmond | VA | 23235 | 1,482 | 45 |
| 7 | Rockville | MD | 20852 | 699 | 42 |
| 8 | Kansas City | MO | 64154 | 926 | 42 |
| 9 | Denver | CO | 80246 | 1,044 | 40 |
| 10 | Portage | MI | 49002 | 186 | 32 |
| 11 | Melbourne | FL | 32904 | 1,124 | 32 |
| 12 | Royal Oak | MI | 48073 | 1,319 | 12 |
| 13 | | | | | |
| 14 | **Subtotal - Matching Zip Codes** | | | **$ 12,139** | **$ 1,239** |
| 15 | | | | 2.2% | |
| 16 | | | | | |
| 17 | Hoover | AL | 35244 | 20 | - |
| 18 | Huntsville | AL | 35806 | 971 | - |
| 19 | Montgomery | AL | 36117 | 1,231 | - |
| 20 | Avondale | AZ | 85392 | 1,106 | - |
| 21 | Chandler | AZ | 85226 | 1,064 | - |
| 22 | Glendale | AZ | 85308 | 1,613 | - |
| 23 | Mesa | AZ | 85201 | 256 | - |
| 24 | Mesa | AZ | 85204 | 533 | - |
| 25 | Phoenix | AZ | 85016 | 612 | - |
| 26 | Phoenix | AZ | 85022 | 143 | - |
| 27 | Phoenix | AZ | 85028 | 1,333 | - |
| 28 | Phoenix | AZ | 85029 | 1,641 | - |
| 29 | Aliso Viejo | CA | 92656 | 828 | - |
| 30 | Antioch | CA | 94531 | 1,456 | - |
| 31 | Bakersfield | CA | 93309 | 1,135 | - |
| 32 | Brea | CA | 92821 | 1,446 | - |
| 33 | Citrus Heights | CA | 95610 | 1,225 | - |
| 34 | City of Industry | CA | 90601 | 198 | - |
| 35 | Corona | CA | 92881 | 1,248 | - |
| 36 | ELK GROVE | CA | 95758 | 1,069 | - |
| 37 | Encinitas | CA | 92024 | 467 | - |

**EXHIBIT 567-28**

OPTIMAL PETS, INC. V. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 38 | Fresno | CA | 93720 | 2,050 | - |
| 39 | Gilroy | CA | 95020 | 938 | - |
| 40 | Glendale | CA | 91206 | 2,209 | - |
| 41 | Huntington Beach | CA | 92647 | 1,153 | - |
| 42 | Irvine | CA | 92618 | 431 | - |
| 43 | La Mesa | CA | 91942 | 780 | - |
| 44 | Larkspur | CA | 94939 | 1,798 | - |
| 45 | Long Beach | CA | 90814 | 772 | - |
| 46 | Los Altos | CA | 94022 | 984 | - |
| 47 | Los Angeles | CA | 90036 | 2,370 | - |
| 48 | Los Angeles | CA | 90066 | 1,337 | - |
| 49 | Menifee | CA | 92584 | 734 | - |
| 50 | Mission Viejo | CA | 92692 | 612 | - |
| 51 | Modesto | CA | 95356 | 1,450 | - |
| 52 | Northridge | CA | 91324 | 1,356 | - |
| 53 | Oceanside | CA | 92054 | 1,782 | - |
| 54 | Orange | CA | 92868 | 564 | - |
| 55 | Palm Desert | CA | 92260 | 958 | - |
| 56 | Palmdale | CA | 93551 | 1,880 | - |
| 57 | Pasadena | CA | 91109 | 1,850 | - |
| 58 | Pinole | CA | 94564 | 587 | - |
| 59 | Rancho Cucamonga | CA | 91739 | 1,187 | - |
| 60 | Redlands | CA | 92374 | 2,301 | - |
| 61 | Roseville | CA | 95678 | 877 | - |
| 62 | San Diego | CA | 92110 | 727 | - |
| 63 | San Diego | CA | 92128 | 295 | - |
| 64 | San Francisco | CA | 94109 | 367 | - |
| 65 | San Jose | CA | 95117 | 1,418 | - |
| 66 | San Jose | CA | 95123 | 953 | - |
| 67 | San Luis Obispo | CA | 93401 | 837 | - |
| 68 | Santa Ana | CA | 92704 | 1,077 | - |
| 69 | Santa Rosa | CA | 95407 | 1,152 | - |
| 70 | Seaside | CA | 93955 | 1,005 | - |
| 71 | Temecula | CA | 92591 | 2,184 | - |
| 72 | Thousand Oaks | CA | 91360 | 1,638 | - |
| 73 | Union City | CA | 94587 | 1,283 | - |
| 74 | Upland | CA | 91784 | 1,502 | - |

EXHIBIT 567-29

OPTIMAL PETS, INC. V. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 75 | Ventura | CA | 93003 | 4,726 | - |
| 76 | Victorville | CA | 92392 | 270 | - |
| 77 | Visalia | CA | 93277 | 1,746 | - |
| 78 | Walnut Creek | CA | 94596 | 154 | - |
| 79 | West Covina | CA | 91791 | 694 | - |
| 80 | West Los Angeles | CA | 90025 | 991 | - |
| 81 | Woodland Hills | CA | 91367 | 1,841 | - |
| 82 | Boulder | CO | 80301 | 932 | - |
| 83 | Centennial | CO | 80112 | 1,547 | - |
| 84 | Colorado Springs | CO | 80906 | 677 | - |
| 85 | Colorado Springs | CO | 80920 | 1,494 | - |
| 86 | Fort Collins | CO | 80525 | 910 | - |
| 87 | Lakewood | CO | 80123 | 964 | - |
| 88 | Brookfield | CT | 06804 | 1,650 | - |
| 89 | Canton | CT | 06019 | 58 | - |
| 90 | Farmington | CT | 06032 | 1,286 | - |
| 91 | Manchester | CT | 06040 | 1,949 | - |
| 92 | Milford | CT | 06460 | 1,426 | - |
| 93 | Newington | CT | 06111 | 2,287 | - |
| 94 | North Haven | CT | 06473 | 173 | - |
| 95 | Norwalk | CT | 06854 | 910 | - |
| 96 | Stamford | CT | 06905 | 1,091 | - |
| 97 | Washington | DC | 20010 | 691 | - |
| 98 | Washington | DC | 20036 | 40 | - |
| 99 | Wilmington | DE | 19803 | 1,047 | - |
| 100 | Wilmington | DE | 19808 | 1,796 | - |
| 101 | Altamonte Springs | FL | 32701 | 1,690 | - |
| 102 | Boca Raton | FL | 33434 | 2,119 | - |
| 103 | Boynton Beach | FL | 33426 | 3,923 | - |
| 104 | Brandon | FL | 33511 | 1,531 | - |
| 105 | Clearwater | FL | 33759 | 2,014 | - |
| 106 | Clermont | FL | 34711 | 1,111 | - |
| 107 | Coconut Creek | FL | 33073 | 333 | - |
| 108 | Coral Springs | FL | 33071 | 956 | - |
| 109 | Dania Beach | FL | 33004 | 288 | - |
| 110 | Daytona Beach | FL | 32114 | 790 | - |
| 111 | Deerfield | FL | 33441 | 407 | - |

## EXHIBIT 567-30

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($)<br>8/2008 through 7/2010 | Overlapping<br>Optimal Pet Sales ($)<br>1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 112 | Delray Beach | FL | 33483 | 445 | - |
| 113 | Estero | FL | 33928 | 108 | - |
| 114 | Fort Lauderdale | FL | 33305 | 2,150 | - |
| 115 | Fort Myers | FL | 33907 | 718 | - |
| 116 | Fort Myers | FL | 33966 | 684 | - |
| 117 | Hialeah | FL | 33012 | 842 | - |
| 118 | Jacksonville | FL | 32246 | 1,268 | - |
| 119 | Jensen Beach | FL | 34957 | 1,463 | - |
| 120 | Jupiter | FL | 33458 | 997 | - |
| 121 | Lakeland | FL | 33809 | 2,021 | - |
| 122 | Merritt Island | FL | 32952 | 248 | - |
| 123 | Miami | FL | 33145 | 414 | - |
| 124 | MIAMI | FL | 33156 | 351 | - |
| 125 | Miami | FL | 33183 | 657 | - |
| 126 | Miami Beach | FL | 33139 | 273 | - |
| 127 | Naples | FL | 34109 | 1,480 | - |
| 128 | Ocala | FL | 34474 | 3,465 | - |
| 129 | Ocoee | FL | 34761 | 1,343 | - |
| 130 | Orange Park | FL | 32073 | 1,045 | - |
| 131 | Orlando | FL | 32803 | 1,759 | - |
| 132 | Orlando | FL | 32809 | 1,106 | - |
| 133 | Orlando | FL | 32828 | 1,180 | - |
| 134 | Orlando | FL | 32839 | 294 | - |
| 135 | Palm Beach Garden | FL | 33410 | 1,463 | - |
| 136 | Palm Coast | FL | 32164 | 757 | - |
| 137 | Palm Harbor | FL | 34684 | 673 | - |
| 138 | Panama City | FL | 32405 | 3,011 | - |
| 139 | Pembroke Pines | FL | 33026 | 630 | - |
| 140 | Pensacola | FL | 32504 | 1,442 | - |
| 141 | Plantation | FL | 33322 | 501 | - |
| 142 | Plantation | FL | 33324 | 872 | - |
| 143 | Pompano Beach | FL | 33062 | 445 | - |
| 144 | Port St.Lucie | FL | 34986 | 711 | - |
| 145 | Sarasota | FL | 34231 | 906 | - |
| 146 | South Miami | FL | 33143 | 2,458 | - |
| 147 | St. Petersburg | FL | 33710 | 2,169 | - |
| 148 | Tallahassee | FL | 32301 | 1,476 | - |

BRUCE L. ROSS & COMPANY

**EXHIBIT 567-31**

<u>OPTIMAL PETS, INC. V. NUTRI-VET, LLC, ET AL.</u>

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

**VS-11**

| City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|------|-------|-----|------------------------------------------------|---------------------------------------------------------|
| 149 TAMPA | FL | 33609 | 1,492 | - |
| 150 Tampa | FL | 33612 | 828 | - |
| 151 Tampa | FL | 33624 | 970 | - |
| 152 The Villages | FL | 32159 | 617 | - |
| 153 Vero Beach | FL | 32966 | 831 | - |
| 154 Wellington | FL | 33414 | 2,525 | - |
| 155 West Bradenton | FL | 34206 | 506 | - |
| 156 West Palm Beach | FL | 33417 | 1,094 | - |
| 157 ALPHARETTA | GA | 30022 | 1,638 | - |
| 158 Atlanta | GA | 30305 | 543 | - |
| 159 Atlanta | GA | 30307 | 848 | - |
| 160 Atlanta | GA | 30338 | 32 | - |
| 161 Atlanta | GA | 30339 | 231 | - |
| 162 Buford | GA | 30519 | 2,807 | - |
| 163 Columbus | GA | 31909 | 2,362 | - |
| 164 Duluth | GA | 30096 | 619 | - |
| 165 East Point | GA | 30344 | 669 | - |
| 166 Marrow | GA | 30260 | 902 | - |
| 167 Newnan | GA | 30265 | 331 | - |
| 168 Snellville | GA | 30078 | 949 | - |
| 169 Aiea | HI | 96701 | 2,050 | - |
| 170 Honolulu | HI | 96814 | 1,242 | - |
| 171 Kailua-Kona | HI | 96740 | 1,117 | - |
| 172 Kaneohe | HI | 96744 | 1,559 | - |
| 173 Lahaina | HI | 96761 | 593 | - |
| 174 Boise | ID | 83704 | 2,323 | - |
| 175 Algonquin | IL | 60102 | 1,530 | - |
| 176 Arlington Heights | IL | 60004 | 2,343 | - |
| 177 Bloomingdale | IL | 60108 | 426 | - |
| 178 Burbank | IL | 60459 | 1,108 | - |
| 179 Calumet City | IL | 60409 | 1,921 | - |
| 180 Chicago | IL | 60614 | 409 | - |
| 181 Chicago | IL | 60641 | 298 | - |
| 182 Chicago | IL | 60647 | 495 | - |
| 183 Crystal Lake | IL | 60014 | 1,892 | - |
| 184 Darien | IL | 60561 | 1,124 | - |
| 185 Deerfield | IL | 60015 | 1,086 | - |

**EXHIBIT 567-32**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 186 | Geneva | IL | 60134 | 1,802 | - |
| 187 | Naperville | IL | 60540 | 890 | - |
| 188 | Niles | IL | 60714 | 1,164 | - |
| 189 | Norridge | IL | 60634 | 1,351 | - |
| 190 | Oakbrook Terrace | IL | 60181 | 754 | - |
| 191 | Orland Park | IL | 60462 | 3,519 | - |
| 192 | Schaumburg | IL | 60173 | 81 | - |
| 193 | Skokie | IL | 60077 | 1,266 | - |
| 194 | Vernon Hills | IL | 60061 | 890 | - |
| 195 | Wheaton | IL | 60187 | 703 | - |
| 196 | Avon | IN | 46123 | 296 | - |
| 197 | Fort Wayne | IN | 46804 | 1,406 | - |
| 198 | Greenwood | IN | 46142 | 1,599 | - |
| 199 | Indianapolis | IN | 46240 | 1,092 | - |
| 200 | Lafayette | IN | 47901 | 459 | - |
| 201 | Merriville | IN | 46410 | 2,519 | - |
| 202 | Mishawaka | IN | 46545 | 1,999 | - |
| 203 | Bowling Green | KY | 42104 | 938 | - |
| 204 | Florence | KY | 41042 | 106 | - |
| 205 | Lexington | KY | 40503 | 467 | - |
| 206 | Louisville | KY | 40207 | 397 | - |
| 207 | New Orleans | LA | 70115 | 685 | - |
| 208 | Shreveport | LA | 71101 | 630 | - |
| 209 | Slidell | LA | 70460 | 877 | - |
| 210 | AUBURN | MA | 01501 | 1,488 | - |
| 211 | Boston | MA | 02108 | 98 | - |
| 212 | Braintree | MA | 02184 | 258 | - |
| 213 | Burlington | MA | 01803 | 1,079 | - |
| 214 | Cambridge | MA | 02138 | 287 | - |
| 215 | Dedham | MA | 02026 | 378 | - |
| 216 | Framingham | MA | 01701 | 925 | - |
| 217 | Hingham | MA | 02043 | 314 | - |
| 218 | Hyannis | MA | 02601 | 532 | - |
| 219 | Newton Upper Falls | MA | 02464 | 571 | - |
| 220 | Peabody | MA | 01960 | 1,167 | - |
| 221 | Saugus | MA | 01906 | 842 | - |
| 222 | Annapolis | MD | 21401 | 932 | - |

BRUCE L. ROSS & COMPANY

**EXHIBIT 567-33**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 223 | Bel Air | MD | 21014 | 1,086 | - |
| 224 | Cantonsville | MD | 21209 | 58 | - |
| 225 | Columbia | MD | 21044 | 922 | - |
| 226 | Frederick | MD | 21702 | 1,542 | - |
| 227 | Gaithersburg | MD | 20877 | 1,104 | - |
| 228 | Gln Burnie | MD | 21061 | 450 | - |
| 229 | Hanover | MD | 21076 | 1,412 | - |
| 230 | Laurel | MD | 20707 | 1,052 | - |
| 231 | Lutherville | MD | 21093 | 805 | - |
| 232 | Owings Mills | MD | 21117 | 1,227 | - |
| 233 | Salisbury | MD | 21804 | 1,224 | - |
| 234 | Waldorf | MD | 20603 | 1,533 | - |
| 235 | Allen Park | MI | 48101 | 1,468 | - |
| 236 | Ann Arbor | MI | 48104 | 756 | - |
| 237 | Auburn Hills | MI | 48326 | 1,498 | - |
| 238 | Farmington Hills | MI | 48334 | 1,398 | - |
| 239 | Rochester Hills | MI | 48307 | 1,262 | - |
| 240 | Roseville | MI | 48066 | 1,939 | - |
| 241 | Shelby Township | MI | 48315 | 2,704 | - |
| 242 | Troy | MI | 48083 | 1,083 | - |
| 243 | Westland | MI | 48185 | 1,118 | - |
| 244 | Coon Rapids | MN | 55448 | 1,054 | - |
| 245 | Minneapolis | MN | 55146 | 717 | - |
| 246 | Woodbury | MN | 55125 | 706 | - |
| 247 | Burlington | NC | 27215 | 480 | - |
| 248 | Cary | NC | 27511 | 1,215 | - |
| 249 | Charlotte | NC | 28216 | 667 | - |
| 250 | Durham | NC | 27713 | 1,081 | - |
| 251 | Fayetteville | NC | 28314 | 1,975 | - |
| 252 | Greensboro | NC | 27409 | 1,355 | - |
| 253 | Greenville | NC | 27858 | 228 | - |
| 254 | Hickory | NC | 28602 | 1,373 | - |
| 255 | Matthews | NC | 28105 | 1,441 | - |
| 256 | Pineville | NC | 28134 | 1,851 | - |
| 257 | Raleigh | NC | 27609 | 1,924 | - |
| 258 | Raleigh | NC | 27617 | 1,203 | - |
| 259 | Wilmington | NC | 28403 | 295 | - |

**EXHIBIT 567-34**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES[1]

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 260 | Winston Salem | NC | 27103 | 1,377 | - |
| 261 | Manchester | NH | 03103 | 746 | - |
| 262 | Nashua | NH | 03060 | 738 | - |
| 263 | Brick | NJ | 08723 | 1,571 | - |
| 264 | BRIDGEWATER | NJ | 08869 | 2,175 | - |
| 265 | Cherry Hill | NJ | 08003 | 1,709 | - |
| 266 | Clifton | NJ | 07014 | 3,643 | - |
| 267 | Deptford | NJ | 08096 | 1,364 | - |
| 268 | East Brunswick | NJ | 08816 | 1,632 | - |
| 269 | East Hanover | NJ | 07936 | 978 | - |
| 270 | Eatontown | NJ | 07724 | 989 | - |
| 271 | Edgewater | NJ | 07020 | 1,695 | - |
| 272 | Freehold | NJ | 07728 | 2,180 | - |
| 273 | Holmdel | NJ | 07733 | 1,966 | - |
| 274 | Ledgewood | NJ | 07852 | 2,890 | - |
| 275 | Little Falls | NJ | 07424 | 2,643 | - |
| 276 | Manahawkin | NJ | 08050 | 704 | - |
| 277 | Mays Landing | NJ | 08330 | 3,357 | - |
| 278 | Metuchen | NJ | 08840 | 1,338 | - |
| 279 | Mount Laurel | NJ | 08054 | 1,307 | - |
| 280 | North Bergen | NJ | 07047 | 1,289 [1] | - |
| 281 | Paramus | NJ | 07652 | 2,719 | - |
| 282 | Princeton | NJ | 08550 | 1,300 | - |
| 283 | Toms River | NJ | 08753 | 758 | - |
| 284 | Union | NJ | 07083 | 738 | - |
| 285 | Watchung | NJ | 07069 | 468 | - |
| 286 | Albuquerque | NM | 87110 | 571 | - |
| 287 | Albuquerque | NM | 87114 | 643 | - |
| 288 | Henderson | NV | 89014 | 2,024 | - |
| 289 | Las Vegas | NV | 89117 | 1,254 | - |
| 290 | Reno | NV | 89502 | 3,096 | - |
| 291 | Albany | NY | 12205 | 1,520 | - |
| 292 | Astoria | NY | 11103 | 414 | - |
| 293 | Bay Shore | NY | 11706 | 727 | - |
| 294 | Bohemia | NY | 11716 | 2,408 | - |
| 295 | Brooklyn | NY | 11201 | 497 | - |
| 296 | Brooklyn | NY | 11209 | 161 | - |

**EXHIBIT 567-35**

OPTIMAL PETS, INC. V. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 297 | Brooklyn | NY | 11217 | 983 | - |
| 298 | Brooklyn | NY | 11234 | 383 | - |
| 299 | Cheektowaga | NY | 14225 | 1,050 | - |
| 300 | Dewitt | NY | 13214 | 562 | - |
| 301 | East Northport | NY | 11725 | 2,381 | - |
| 302 | Forest Hills | NY | 11375 | 1,061 | - |
| 303 | GARDEN CITY | NY | 11530 | 1,623 | - |
| 304 | Huntington Station | NY | 11746 | 1,230 | - |
| 305 | Jackson Heights | NY | 11372 | 183 | - |
| 306 | Levittown | NY | 11756 | 1,059 | - |
| 307 | Manhasset | NY | 11030 | 424 | - |
| 308 | Massapequa | NY | 11758 | 976 | - |
| 309 | Merrick | NY | 11566 | 1,724 | - |
| 310 | Middletown | NY | 10940 | 2,237 | - |
| 311 | Nanuet | NY | 10954 | 2,437 | - |
| 312 | New Hartford | NY | 13413 | 519 | - |
| 313 | New York | NY | 10001 | 16 | - |
| 314 | New York | NY | 10003 | 49 | - |
| 315 | New York | NY | 10010 | 261 | - |
| 316 | New York | NY | 10011 | 333 | - |
| 317 | New York | NY | 10014 | 211 | - |
| 318 | New York | NY | 10016 | 638 | - |
| 319 | New York | NY | 10017 | 158 | - |
| 320 | New York | NY | 10019 | 170 | - |
| 321 | New York | NY | 10021 | 73 | - |
| 322 | New York | NY | 10022 | 121 | - |
| 323 | New York | NY | 10024 | 105 | - |
| 324 | New York | NY | 10025 | 103 | - |
| 325 | New York | NY | 10028 | 136 | - |
| 326 | New York | NY | 10033 | 61 | - |
| 327 | New York | NY | 10038 | 108 | - |
| 328 | Oceanside | NY | 11572 | 896 | - |
| 329 | Pelham Manor | NY | 10803 | 181 | - |
| 330 | Portchester | NY | 10573 | 1,290 | - |
| 331 | Poughkeepsie | NY | 12601 | 841 | - |
| 332 | Rochester | NY | 14618 | 1,026 | - |
| 333 | Staten Island | NY | 10314 | 2,957 | - |

## EXHIBIT 567-36

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|------|-------|-----|------------------------------------------------|----------------------------------------------------------|
| 334 Stony Brook | NY | 11790 | 1,709 | - |
| 335 Syossett | NY | 11791 | 1,307 | - |
| 336 Tonawanda | NY | 14150 | 936 | - |
| 337 Valley Stream | NY | 11581 | 1,088 | - |
| 338 Water Mill | NY | 11976 | 115 | - |
| 339 White Plains | NY | 10601 | 1,396 | - |
| 340 Yonkers | NY | 10701 | 463 | - |
| 341 Boardman | OH | 44512 | 1,244 | - |
| 342 Dayton | OH | 45431 | 120 | - |
| 343 Dayton | OH | 45459 | 174 | - |
| 344 Mansfield | OH | 44906 | 892 | - |
| 345 Mayfield Heights | OH | 44124 | 1,281 | - |
| 346 Mentor | OH | 44060 | 2,246 | - |
| 347 North Canton | OH | 44718 | 818 | - |
| 348 North Olmsted | OH | 44070 | 3,705 | - |
| 349 Polaris | OH | 43240 | 1,228 | - |
| 350 Toledo | OH | 43623 | 1,772 | - |
| 351 Willoughby | OH | 44094 | 32 | - |
| 352 Beaverton | OR | 97006 | 885 | - |
| 353 Portland | OR | 97204 | 653 | - |
| 354 Portland | OR | 97217 | 821 | - |
| 355 Portland | OR | 97232 | 466 | - |
| 356 Abington | PA | 19001 | 1,946 | - |
| 357 Bryn Mawr | PA | 19010 | 1,245 | - |
| 358 Cranberry Twonship | PA | 16066 | 58 | - |
| 359 Exton | PA | 19341 | 1,045 | - |
| 360 Harrisburg | PA | 17112 | 741 | - |
| 361 Homestead | PA | 15120 | 744 | - |
| 362 King of Prussia | PA | 19406 | 246 | - |
| 363 Montgomeryville | PA | 18936 | 660 | - |
| 364 Philadelphia | PA | 19103 | 176 | - |
| 365 Robinson Township | PA | 15205 | 556 | - |
| 366 Springfield | PA | 19064 | 683 | - |
| 367 Whitehall | PA | 18052 | 2,567 | - |
| 368 Wyomissing | PA | 19610 | 3,019 | - |
| 369 York | PA | 17404 | 1,782 | - |
| 370 Warwick | RI | 02886 | 929 | - |

BRUCE L. ROSS & COMPANY

PAGE 10 OF 13

**EXHIBIT 567-37**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 371 | Anderson | SC | 29621 | 631 | - |
| 372 | Columbia | SC | 29212 | 1,884 | - |
| 373 | Florence | SC | 29501 | 141 | - |
| 374 | Forest Acres | SC | 29204 | 1,234 | - |
| 375 | Greenville | SC | 29607 | 2,424 | - |
| 376 | Myrtle Beach | SC | 29577 | 580 | - |
| 377 | North Charleston | SC | 29406 | 2,787 | - |
| 378 | Chattanooga | TN | 37421 | 1,310 | - |
| 379 | Franklin | TN | 37067 | 2,702 | - |
| 380 | Jackson | TN | 38305 | 171 | - |
| 381 | Johnson City | TN | 37604 | 817 | - |
| 382 | Knoxville | TN | 37919 | 1,030 | - |
| 383 | Madison | TN | 37115 | 1,779 | - |
| 384 | Memphis | TN | 38117 | 940 | - |
| 385 | Allen | TX | 75013 | 460 | - |
| 386 | Arlington | TX | 76017 | 1,937 | - |
| 387 | Austin | TX | 78759 | 581 | - |
| 388 | Beaumont | TX | 77701 | 465 | - |
| 389 | Brownsville | TX | 78520 | 310 | - |
| 390 | Cedar Hill | TX | 75104 | 1,760 | - |
| 391 | Corpus Christi | TX | 78411 | 810 | - |
| 392 | Dallas | TX | 75206 | 1,512 | - |
| 393 | DENTON | TX | 76205 | 1,107 | - |
| 394 | East Plano | TX | 75075 | 986 | - |
| 395 | El Paso | TX | 79938 | 945 | - |
| 396 | Flower Mound | TX | 75022 | 539 | - |
| 397 | Fort Worth | TX | 76132 | 1,188 | - |
| 398 | Frisco | TX | 75034 | 1,419 | - |
| 399 | Georgetown | TX | 78628 | 977 | - |
| 400 | Houston | TX | 77005 | 1,419 | - |
| 401 | Houston | TX | 77007 | 501 | - |
| 402 | Houston | TX | 77063 | 1,908 | - |
| 403 | Houston | TX | 77070 | 2,551 | - |
| 404 | Houston | TX | 77094 | 2,689 | - |
| 405 | Houston | TX | 77095 | 2,423 | - |
| 406 | Hurst | TX | 76053 | 2,992 | - |
| 407 | Irving | TX | 75060 | 1,322 | - |

**EXHIBIT 567-38**

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES[1]

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($) 8/2008 through 7/2010 | Overlapping Optimal Pet Sales ($) 1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 408 | Lewisville | TX | 75067 | 840 | - |
| 409 | McAllen | TX | 78504 | 678 | - |
| 410 | MESQUITE | TX | 75150 | 1,697 | - |
| 411 | Pasadena | TX | 77505 | 1,859 | - |
| 412 | Pearland | TX | 77581 | 426 | - |
| 413 | Plano | TX | 75093 | 2,005 | - |
| 414 | Round Rock | TX | 78664 | 2,111 | - |
| 415 | San Antonio | TX | 78216 | 712 | - |
| 416 | San Antonio | TX | 78254 | 1,026 | - |
| 417 | San Antonio | TX | 78256 | 1,052 | - |
| 418 | Shenandoah | TX | 77385 | 2,129 | - |
| 419 | Southlake | TX | 76092 | 1,981 | - |
| 420 | Waco | TX | 76711 | 959 | - |
| 421 | Webster | TX | 77598 | 3,606 | - |
| 422 | Alexandria | VA | 22305 | 749 | - |
| 423 | Arlington | VA | 22202 | 366 | - |
| 424 | Bailey's Crossroads | VA | 22041 | 1,490 | - |
| 425 | Charlottesville | VA | 22901 | 1,077 | - |
| 426 | Chesapeake | VA | 23320 | 2,455 | - |
| 427 | Fairfax | VA | 22030 | 1,056 | - |
| 428 | Fredericksburg | VA | 22401 | 1,785 | - |
| 429 | Glen Allen | VA | 23059 | 905 | - |
| 430 | Lynchburg | VA | 24502 | 749 | - |
| 431 | Manassas | VA | 20109 | 1,318 | - |
| 432 | Newport News | VA | 23602 | 1,367 | - |
| 433 | Richmond | VA | 23230 | 633 | - |
| 434 | Richmond | VA | 23233 | 1,406 | - |
| 435 | Richmond | VA | 23294 | 1,153 | - |
| 436 | Springfield | VA | 22150 | 1,795 | - |
| 437 | Sterling | VA | 20166 | 1,281 | - |
| 438 | Vienna | VA | 22182 | 777 | - |
| 439 | Virginia Beach | VA | 23462 | 2,047 | - |
| 440 | Winchester | VA | 22601 | 1,413 | - |
| 441 | Woodbridge | VA | 22192 | 30 | - |
| 442 | South Burlington | VT | 05403 | 1,122 | - |
| 443 | Bellevue | WA | 98004 | 168 | - |
| 444 | Issaquah | WA | 98029 | 551 | - |

## EXHIBIT 567-39

OPTIMAL PETS, INC. v. NUTRI-VET, LLC, ET AL.

## ANALYSIS OF VITAMIN SHOPPE SALES(1)

### Comparison to Optimal Pet Sales Within Same Zip Codes

VS-11

| | City | State | Zip | Vitamin Shoppe Sales ($)<br>8/2008 through 7/2010 | Overlapping<br>Optimal Pet Sales ($)<br>1/2004 through 3/2009 |
|---|---|---|---|---|---|
| 445 | Olympia | WA | 98502 | 753 | - |
| 446 | Redmond | WA | 98052 | 829 | - |
| 447 | SEATTLE | WA | 98125 | 5 | - |
| 448 | Tukwila | WA | 98188 | 1,408 | - |
| 449 | Appleton | WI | 54913 | 819 | - |
| 450 | Brookfield | WI | 53005 | 1,299 | - |
| 451 | Greenfield | WI | 53220 | 2,048 | - |
| 452 | Madison | WI | 53704 | 640 | - |
| 453 | Madison | WI | 53717 | 238 | - |
| 454 | Wauwatosa | WI | 53226 | 1,041 | - |
| 455 | | | | | |
| 456 | **Subtotal - Non-Matching Zip Codes** | | | $    502,592 | $    - |
| 457 | | | | 91.4% | |
| 458 | | | | | |
| 459 | Catalog | | | 8,638 | |
| 460 | Web | | | 26,703 | |
| 461 | | | | | |
| 462 | **Subtotal - Catalog & Web** | | | $    35,341 | $    - |
| 463 | | | | 6.4% | |
| 464 | | | | | |
| 465 | **TOTAL** | | | $    550,072 | $    1,239 |
| 466 | | | | 100.0% | |
| 467 | | | | | |

468 **NOTES**

469 (1) Because catalog sales and web sales are all designated as sales in North Bergen, NJ 07047 (Vitamin Shoppe HQ), we have excluded those sales from that zip code and accounted for them separately.

## EXHIBIT 567-40

**EXHIBIT 5**



## James E. Clevenger
#### Attorney at Law

1334 Scenic Drive
Escondido, California 92029
Phone (760) 489-5043

Fax (760) 489-0414                                              E-mail: trademarks@cox.net

September 16, 2008

The Vitamin Shoppe
2101 91st Street
North Bergen, NJ 07047

Re:  OPTIMAL PET trademark

Dear Sir or Madam:

I am an attorney for Optimal Pets, Inc., a California
corporation. My client has used and is the owner of the trademark
OPTIMAL PETS for a variety of animal/pet products, including
dietary supplements, grooming products, and other items. My
client's ownership dates to as early as January 2004, when the
mark was adopted and used for said goods. The mark has been used
continuously since then throughout the United States.

It has come to my client's attention that The Vitamin Shoppe has
announced publicly that it intends to adopt and use the mark
OPTIMAL PET for a variety of animal and pet-related goods, some
of which are directly competitive with my client's good sold
under its OPTIMAL PETS mark.

It is my opinion that the mark OPTIMAL PET for the goods listed
in your recent press release is confusingly similar to my
client's mark OPTIMAL PETS for its identical and/or closely
related goods. As such, your use of the mark of any such goods
would constitute federal unfair competition under § 43(a)(1)(a)
of the Federal Trademark (Lanham) Act, 15 U.S.C. § 1125(a)(1)(a).
It would also constitute trademark infringement and unfair
competition under applicable state laws.

The Vitamin Shoppe
September 16, 2009
Page 2


Accordingly, I must insist that you provide us with prompt
written assurance that The Vitamin Shoppe either has not adopted
and will not adopt the mark OPTIMAL PET for any goods or services
related to my client's goods or will immediately cease such use.
We expect to receive that assurance within 10 days of the date of
this letter.

Sincerely,

James E. Clevenger

JEC:ahc

VS_000548

**EXHIBIT  6**

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

```
FILED
CLERK, U.S. DISTRICT COURT

JUL 1 4 2011

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY
```

OPTIMAL PETS, INC.                      *

            Plaintiff                   *

        vs.                             *       EDCV-08-1795 MJG

NUTRI-VET, LLC, et al.                  *

            Defendants                  *

*       *       *       *       *       *       *       *       *

## SUBSTANTIVE JURY INSTRUCTIONS

QUESTION 1 ASKS:


1.   In which geographical areas, if any, has Plaintiff
Optimal Pets, Inc. proven by a preponderance of the
evidence that, by August 2008, it had it used the name
"Optimal Pets" in commerce as a trademark for the products
at issue?


Optimal Pets, Inc. would have used the name "Optimal Pets"

in commerce as a trademark for the products at issue in an area

if, following its first use of the name "Optimal Pets" in

commerce in that area, there was a follow up of activities that,

in the context of the particular industry or trade, was

sufficient to show a genuine intent to put the product on the

market under that name on a commercial scale in the context of

the market within a reasonable time.

QUESTION 2 ASKS:

2.   In which geographical areas, if any, has Plaintiff
Optimal Pets, Inc. proven by a preponderance of the
evidence that, by August 1, 2008, it had established
legally sufficient market penetration to establish common
law ownership rights in "Optimal Pets?"


You are to decide, based upon your evaluation of the
evidence, that area, if any in which Plaintiff Optimal Pets, as
of August 1, 2008, had legally sufficient market penetration
using the name "Optimal Pets" to prevent the Defendants from
using the similar name "Optimal Pet."

You shall determine the geographical area, if any, in which
Optimal Pets, Inc. had legally sufficient market penetration by
considering each of the following four factors, giving each
factor the weight that you determine to be appropriate under the
circumstances of this case.   The factors are: (1) the volume of
sales of OPI's Optimal Pets products, (2) the growth trends
(both positive and negative) in the area; (3) the number of
persons actually purchasing the Optimal Pets products in
relation to the potential number of customers; and (4) the
amount of Optimal Pets product advertising in the area.

Case 5:08-cv-01795-MJG-AGR   Document 182   Filed 07/27/11   Page 55 of 96   Page
Case 5:08-cv-01795-MJG-AGR   Document 165   Filed 07/14/11   Page 3 of 3   Page ID #:2246
ID #:2371

QUESTIONS 3 AND 4 ASK:

3.  Has Plaintiff Optimal Pets, Inc. proven by a
preponderance of the evidence that Defendant Nutri-Vet, LLC
adopted the name "Optimal Pet" for the products at issue in
bad faith?

                                                                             ————————
Yes or No

4.  Has Plaintiff Optimal Pets, Inc. proven by a
preponderance of the evidence that Defendant Vitamin Shoppe
Industries, Inc. adopted the name "Optimal Pet" for the
products at issue in bad faith?

                                                                              ————————
Yes or No

Plaintiff Optimal Pets, Inc. contends that when the

Defendants adopted the name "Optimal Pet" for their products,

that is August 1, 2008, they knew that the name "Optimal Pets

was being used to sell competing products by Optimal Pets, Inc.

Defendants deny that they knew this.

If you find, as contended by Plaintiff Optimal Pets, Inc.

that when a Defendants adopted the name "Optimal Pet" for its

products it knew that the name "Optimal Pets was being used to

sell competing products by Optimal Pets, Inc. then you should

answer the question "yes" as to the Defendant.  If not, you

should answer the question "no" as to that Defendant.

3

FILED
CLERK, U.S. DISTRICT COURT

JUL 14 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

OPTIMAL PETS, INC.                    *

            Plaintiff         *

      vs.                             *        EDCV-08-1795 MJG

NUTRI-VET, LLC, et al.               *

          Defendants          *

*       *       *       *       *       *       *       *       *

### REVISED QUESTION 2 INSTRUCTIONS

QUESTION 2 ASKS:

> In which geographical areas, if any, has
> Plaintiff Optimal Pets, Inc. proven by a
> preponderance of the evidence that, by August
> 1, 2008, it had established legally
> sufficient market penetration to establish
> common law ownership rights in "Optimal
> Pets?"

You are to decide, based upon your evaluation of the

evidence, that area, if any in which Plaintiff Optimal Pets, as

of August 1, 2008, had legally sufficient market penetration

using the name "Optimal Pets" to prevent the Defendants from

using the similar name "Optimal Pet."

You shall determine the geographical area, if any, in which

Optimal Pets, Inc. had legally sufficient market penetration by

considering each of the following four factors, giving each

factor the weight that you determine to be appropriate under the

Case 5:08-cv-01795-MJG-AGR   Document 182   Filed 07/27/11   Page 57 of 96   Page
Case 5:08-cv-01795-MJG-AGR   Document 166-3   Filed 07/14/11   Page 2 of 2   Page ID #:2248
ID #:2373

circumstances of this case.    The factors are: (1) the volume of
sales of OPI's Optimal Pets products, (2)  the growth trends
(both positive and negative) in the area; (3) the proportion or
percentage of OPI's sales of "Optimal Pets" products in relation
to the market place of the locality in question; and (4) the
amount of Optimal Pets product advertising in the area.

Legal Tabs Co.  1-800-322-3022

Recycled   Stock # R-EX-5-B

**EXHIBIT  7**

1

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3            HONORABLE OTIS D. WRIGHT

4         UNITED STATES DISTRICT JUDGE PRESIDING

5                    - - -

6

   OPTIMAL PETS, INC.,                )
7                      PLAINTIFF,     )
                                      )
8     VS.                             )      NO. CV 08-1795 MJG
                                      )
9     NUTRI-VET, LLC, et al.,         )
                         DEFENDANT,   )
10    _____)

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14            LOS ANGELES, CALIFORNIA

15          WEDNESDAY, JULY 7, 2011

16

17

18    _____

19        KATIE E. THIBODEAUX, CSR 9858
          U.S. Official Court Reporter
20        312 North Spring Street, #436
          Los Angeles, California 90012

21

22

23

24    COPY

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

15

1  business, a brick and mortar business establishment, a

2  place to do business?

3  A    It was always within Garmon Corporation or Genesis

4  facilities.

5  Q    So in the early years if I wanted to call OPI, I

6  would pick up the phone, I would call them, the phone

7  would ring and it would actually ring at Genesis; is that

8  right?

9  A    Yes, sir.

10  Q    Now, if I did it today, if I picked up the phone

11  and called OPI, it would actually get -- it would ring at

12  the Garmon Corporation?

13  A    Yes, sir.  That's correct.

14  Q    So we are going to come back to this later, but if

15  OPI doesn't have any employees, how does OPI send an

16  employee to a trade show?

17  A    They were actually employees of Garmon Corporation

18  or Genesis.

19  Q    Thank you.  I would like to show you Exhibit 565-5

20  if I may.

21  A    Did you say A, sir?

22  Q    Well, Mr. Garmon, hang on a second there?

23      MR. HOLLEY:  We are good.

24  Q    BY MR. ISAACS: So, Sean, can you put on the

25  screen -- how tiny are the numbers.

UNITED STATES DISTRICT COURT,    CENTRAL DISTRICT OF CALIFORNIA

1    Q       And then when Genesis sends them out the door, they

2    have PNC on them?

3    A       Yes, sir.

4    Q       And then when PNC sells them to the ultimate

5    consumer, it has the name PNC on it, not the name OPI?

6    A       Yes.

7    Q       And, Sean, would you put up 565-5.

8            All right.  Let's see if we can enlarge the

9    bottom here.  And I am going to represent to you,

10   Mr. Garmon, that this figure, the 26,310.14 figure is the

11   five years of sales for OPI, 2004 to March of 2009 taking

12   out the PNC sales.  Okay.

13           And I know we disagree on the PNC sales, so

14   let's agree to disagree, but do you at least agree with

15   me that if the PNC sales came out, that would be the

16   total of OPI for the five year period?

17   A       I believe that to be correct.  Yes.

18   Q       Okay.  Now, I want to see if I can get Sean to

19   scroll up to the top.  Can you guys see the numbers now,

20   or are they still hard to see?

21           So just as an example, I am going to take the

22   first one at the top, Alaska, does this square --

23   withdraw.  Let's do it this way.  The approximate PNC

24   sales were in 2005; right?

25   A       Yes.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

19

1 Q    And since 2005, OPI has not sold anything further

2 to PNC?

3 A    Correct.

4 Q    And so now looking at this chart just in Alaska is

5 on top so I am picking this out, in '04, there were

6 $14.15 of sales.  Is that your understanding?

7 A    Yes, sir.

8 Q    And then 2005, $126 of sales; is that your

9 understanding?

10 A    Yes, sir.

11 Q    And then in '06, '07, '08 and '09, no sales?

12 A    Yes, sir.

13 Q    So the aggregate was 140.15; is that correct?

14 A    Looks correct to me.

15 Q    So we could go through these one by one, but what I

16 would like to do is put up a chart which is 573.  I'm

17 sorry.  575.

18     MR. HOLLEY:  Can you wait and just darken that.

19     MR. ISAACS:  Can you darken that.

20     (Pause in proceedings.)

21     MR. ISAACS:  Okay.

22 Q    So, Mr. Garmon, what we did here I will

23 represent -- let's see if we can blow it up.  I will

24 represent to you the exact same number, 26,310.14, this

25 is the same chart that I showed you before except we

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

21

1    you are selling pet supplement products, does a company

2    need to register with the state's department of

3    agriculture?

4    A    Depends on the product.

5    Q    So it is sometimes yes, sometimes no?

6    A    Correct.

7    Q    All right.  Do you agree with me -- withdraw.  Does

8    the Garmon Corporation, your big company, does the Garmon

9    Corporation register with the department of agriculture

10   in every state?

11           MR. HOLLEY:  Objection.  Relevance.

12           THE COURT:  Overruled.

13           THE WITNESS:  No, sir.

14   Q    BY MR. ISAACS: It doesn't at all?

15   A    No, I did not say that.

16   Q    I'm sorry.

17   A    Repeat your first question.

18   Q    Yes.  Does the Garmon Corporation -- I am going to

19   ask a new question.

20   A    You said it in every state and I said no, sir.

21   Q    So you don't do it in every state?

22   A    No.

23   Q    In any state?

24   A    Some, yes.

25   Q    Some, yes.  Some, no.  Does it depend what product

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

22

1   you are selling?

2   A     It depends on the product.  It depends on the

3   state.  It is very, very, very expensive for any

4   manufacturer.  Most all manufacturers only register if

5   the state asks them to register a product.

6   Q     Well, on -- let's take New York.  Isn't it true

7   that OPI is not registered with the Department of

8   Agriculture in New York?

9          MR. HOLLEY:  Objection.  Relevance.

10         THE COURT:  Overruled.

11         THE WITNESS:  That is true.

12  Q     BY MR. ISAACS: And isn't it true that OPI is not

13  registered with the Department of Agriculture in

14  Washington?

15  A     That is probably true.  I wouldn't know.  If you

16  want to go through each one, I can't definitely answer

17  you every one.  If a state asked me to register, I would

18  have registered.

19  Q     How about I ask it this way.  Let's take Arizona

20  for a second.  Can you affirmatively tell me as you sit

21  here today that this company, OPI, has registered with

22  the Department of Agriculture in Arizona?

23  A     No, sir.  And neither has Garmon Corp. to my

24  knowledge.

25  Q     So you believe that Garmon Corporation has not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

23

1    registered with the Department of Agriculture in Arizona?

2    A    I don't believe so.

3    Q    And the reason for that is it is expensive to

4    register with the Department of Agriculture?

5    A    I don't know whether Arizona even checks or asks

6    for registration.  For instance, California does not on

7    pet products.

8    Q    Does Missouri?

9    A    I don't know.  Maybe.

10   Q    Missouri is OPI's top state; correct?

11   A    Correct.

12   Q    Isn't it true that OPI is not registered with the

13   Department of Agriculture in the state of Missouri?

14   A    I don't know for sure, but I don't believe we are.

15   Q    But you think those sales should count for purposes

16   of market penetration; correct?

17   A    Yes.

18   Q    Going back to Exhibit 575-1.  I want to talk a

19   little bit about a trend here.

20        Sean, can we -- I'm sorry.  We weren't at the

21   right place.  575-1.  Okay.

22        Mr. Garmon, I am going to represent to you

23   that a dash shows no sale so that you can kind of measure

24   the trends.

25        And, Sean, if you could go to the top of this

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

29

```
 1   which accounted for half of U.S. animal nutrition sales
 2   and grew 7.4 percent to 1.4 billion in 2008 adding
 3   98 million in new sales dollars.
 4            Do you see that?
 5   A    Yes, sir.  I see that.
 6   Q    Now, when this came up at your deposition, you
 7   believed that the 1.4 billion estimate for the size of
 8   the market is high, and then a low size estimate would be
 9   700 million?
10            Is that a fair statement?
11   A    Not for my market but for the entire market
12   including Target, WalMart, Petco, Pet Smart, and that
13   would still be a little on the high side I believe.
14   Q    Okay.  We are going to talk about your market a
15   lot.  I promise you we will get back to that, but do you
16   at least agree with me that the pet supplement market,
17   700 million is about right?  Maybe you think it is a
18   little high?
19   A    At retail dollars, it is a little high, but, yes,
20   for the whole U.S. for everything.
21   Q    Okay.  And you and I can debate our view of the
22   markets later, but we will come back to that.  Let's take
23   that off.
24            THE COURT:  Guys, just to be clear, I think there
25   was some reference to because you are taking horses out.
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

30

1          MR. ISAACS:  Yeah.  Well, is part of the reason --

2    thank you, your Honor.

3    Q    Is that you believe the 1.4 billion is too high is

4    that market includes both horses, pets and cats, and if

5    you take out the horse component, then the retail market

6    gets down to maybe 650 to 700 million?

7    A    Yes.

8    Q    So horses comprises about 50 percent of the market,

9    and dogs and cats are about 50 percent?

10   A    I would say horses are really more like at that

11   time 60 percent.  Today they are probably 50 percent.

12   Q    Okay.  All right.  I don't want to spend a lot of

13   time on this, but yesterday you did mention that there

14   was a time where OPI was a suspended corporation?

15   A    Yes.

16   Q    And it was suspended from like September to

17   November of 2008?

18   A    Yes.

19   Q    And that is right about the time that you sent the

20   cease and desist letter too; right?

21   A    Yes.

22   Q    All right.  I am going to switch gears on you a

23   little bit, Mr. Garmon.  I want to ask you a few

24   questions about the Garmon Corporation's -- nothing to do

25   with OPI -- but the Garmon Corporation interactions with

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

31

1    the Vitamin Shoppe.   Okay?

2    A     Yes.

3    Q     Okay.   So am I correct that during the time that

4    you were trying to strike up business with the Vitamin

5    Shoppe, you never mentioned the name Optimal Pet?

6    A     I do not believe I did.

7    Q     Okay.   So I would like to show you Exhibit 35, and

8    we are going to try and make this a little bigger if

9    possible because we are more interested in the bottom

10   half than the top half.   So do you see this e-mail that

11   is sent on February 11th, 2008 that is sent to Gail

12   Mullery from somebody named Jody Hoefler.

13            Do you see that?

14   A     Yes.

15   Q     You know Jody Hoefler is somebody who works for

16   you; right?

17   A     Yes.

18   Q     And you were actually CC'd on the e-mail?

19   A     Yes.

20   Q     Now, Gail, Gail Mullery is a person who works at

21   the Vitamin Shoppe; right?

22   A     Yes.

23   Q     And she is actually the person that you are

24   purchasing to try and make this private label deal with

25   the Vitamin Shoppe; right?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

32

1   A    Yes.

2   Q    She is their point person in other words?

3   A    She is their point person.  Yes.

4   Q    Okay.  Now, in this mailer that was copied to you,

5   Jody kind of sets out a list of proposed names for this

6   private label; correct?

7   A    Yes.

8   Q    And do you agree with me that one of the names --

9   withdraw.  Do you agree with me that Optimal Pet is not

10  one of the names listed?

11  A    Yes.

12  Q    And do you also agree with me that Greentree is

13  one of the names listed?

14  A    Yes, it is.

15  Q    Now, if I understood your testimony correctly

16  yesterday, Greentree is one of the subcompanies

17  underneath the Garmon Corporation; right?

18  A    Yes, it is.  We purchased Greentree in 1998.

19  Q    Okay.  So you were telling Vitamin Shoppe, hey, how

20  about go with our Greentree name, but you never told

21  them, hey, why don't you go with our OPI name; right?

22  A    That is true.

23  Q    And we are going to talk about this later, but

24  maybe just you could tell me "yes" or "no", is there a

25  reason why you didn't tell them about it?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

34

1    9:13 a.m. from you, you, Scott, to Chuck Latham and copied

2    to Jessica Broder.

3        What are you doing in this e-mail?

4    "A  It says please send in your list of ideas to Jody.  She

5    will compile, research for trademarks that are filed with

6    the PTO, and then we can offer them choices.

7    "Q  What was your intention in what you were stating here?

8    What were you doing?

9    "A  By the witness:  The intention was to try and find a

10   name that was not being used by someone else or a trademark

11   by someone else.  We always searched the Internet first.  We

12   go to the PTO search second, and then after that, we go to

13   an attorney."

14   Q     Do you recall that testimony?

15   A     Yes.  Because we don't have access to state

16   incorporation papers.  The attorney does that.

17   Q     Well, was I asking you about what your attorney

18   does or what you do?

19   A     I apologize.  I misstated.

20   Q     So I am just saying what your game plan on clearing

21   and checking and being careful was to search the

22   Internet, search the United States Patent and Trademark

23   Office and check with an attorney; right?

24   A     Yes, sir.

25   Q     Okay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

38

```
1    A      It is awful close to my name.

2    Q      And that is, in fact, something that popped into

3    your mind when you made the decision to file this lawsuit

4    over the name Optimal Pet; right?

5    A      No.  I never filed anything against him on the name

6    Nutri-Vet.

7    Q      Okay.  So, okay.  So you are telling me the nature

8    that Nutri-Vet had nothing to do with it; right?

9    A      No.

10   Q      No means, yes, it had nothing to do with it?

11   A      No.  It didn't have anything to do with it.  Why

12   would it?

13   Q      Well, are you asking me?

14   A      Guess not.  No.  It didn't have nothing to do with

15   it.

16   Q      Isn't it true you mentioned it yesterday as one of

17   the motivator factors?

18   A      I don't know that I said it was a motivating

19   factor.

20   Q      Okay.  Isn't it true that you mentioned it as when

21   Mr. Holley asked you what was your reaction when you

22   found out, isn't it true that you mentioned that?

23   A      Yes.  That is true.

24   Q      Okay.  Now, isn't it true that you never mentioned

25   the name Optimal Pet to chuck Francis?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

39

1  A      I do not believe that I ever did.

2  Q      And I want to talk for a second now about this

3  board, the national animal supplement counsel.  Did I get

4  it right?

5  A      You got it right.

6  Q      And the way I understand it and please correct me

7  if I am wrong, but it is kind of like if your product

8  gets approved by the NASC, it is like a good housekeeping

9  sale of approval?

10  A      Your product does not get approved.  Your company

11  gets audited and approved to use the seal on the

12  appropriate products that fit that class and are labeled

13  properly.

14  Q      Now, there is several of you big wigs are on this

15  board -- right -- the NASC?

16  A      There is nine board members, yes.

17  Q      And one of them is Mr. Bookout?

18  A      Yes, sir.

19  Q      Now, he certainly knows all about Optimal Pet

20  because he was part of the whole process; right?

21  A      Yes.

22  Q      I am going to throw some names at you.  Laurie

23  Chavez.  Do you recognize that name?

24  A      Yes.  She is on the board.

25  Q      Do you ever tell her about your company Optimal

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

40

1  Pet?

2  A     Don't believe that I did.

3  Q     Nick Herziog, do you know that name?

4  A     He is on the board.

5  Q     Did you ever tell him about your company, Optimal

6  Pet?

7  A     No, sir.  I don't believe that I did.

8  Q     Paul Ginzholt?

9  A     He is on the board.  Yes.

10  Q     Did you ever tell him?

11  A     No, sir.  I don't believe that I did.

12  Q     Mr. Metz?

13  A     Would you like me to make this short?  I don't

14  believe I said it to any other board member other than

15  Bill Bookout.  Save us sometime.

16  Q     Okay.  You mentioned yesterday that you have been

17  working with Garmon Corporation since 1979?

18  A     Yes.

19  Q     Is Garmon Corporation a family business?

20  A     It is a corporation.  It is a C corporation.  I own

21  stock, and currently my father owns stock.

22  Q     Did your father start the business?

23  A     No, sir.  My father and I did it together at the

24  same time.

25  Q     So was 1979 the -- was that earlier in your

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

46

1   Is this an ad that OPI placed in Animal Wellness?

2   A    I believe this is a cover for that one that we

3   placed the ad in.   Yes.

4   Q    Thank you.   In the -- towards the back or on the

5   very back cover you placed it, and you mentioned it cost

6   $5,000?

7   A    Yes.

8   Q    Do you and I both agree with each other that this

9   was an ad that got placed in 2004?

10  A    Yes.

11  Q    Early 2004?

12  A    Yes.

13  Q    So maybe like January, February of 2004?

14  A    I would have to look at the date on the magazine.

15  I don't recall.

16  Q    And the next one, we don't need to put it up, but

17  Exhibit 155, it wasn't really an advertisement, was it?

18  It was what was called a product review?

19  A    The product picks, do you mean?

20  Q    A product pick.   Yes.

21  A    Yes.

22  Q    Now, a product pick is something different than a

23  paid for advertisement; right?

24  A    Yes.

25  Q    Product pick is like a movie review or the magazine

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

47

1    writes something nice about your product?

2    A    Yes.

3    Q    That is good for business; right?

4    A    Yes.

5    Q    And, by the way, do you agree with me the reason

6    you do advertise, the reason you do promotion is to

7    generate sales; right?

8    A    Yes.

9    Q    So, this product pick, is that something that

10   they -- that this Animal Wellness gives you in exchange

11   for running that $5,000 ad?  Is it part of the deal?

12   A    To be honest, I don't know on that one.  Some of

13   them are, some of them aren't.

14   Q    Okay.  That product pick was also in 2004; correct?

15   A    Yes.

16   Q    All right.  Now, was there any advertisements

17   placed by OPI after 2004?

18   A    In this magazine, no.

19   Q    Okay.  Let's talk about this magazine for a second,

20   animal Wellness.  It is a Canadian magazine; right?

21   A    They are based in Canada.  Yes.  They have

22   circulation in Canada and the U.S.

23   Q    Now, is this a magazine that pet consumers buy, or

24   is this only a magazine that pet professionals buy?

25   A    Both.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

48

1    Q     Okay. So the target audience of this is pet

2    professionals and us regular folk who have pets; right?

3    A     Yes.

4    Q     Okay. Other than this one advertisement in Animal

5    Wellness, did OPI run any other advertisements anywhere

6    after 2004?

7    A     Yes, we did.

8    Q     How many?

9    A     Approximately 20.

10    Q     Were any of those run after 2005?

11    A     I don't know.

12    Q     Other than 154 and 155, do you agree with me you

13    have not come forward with any advertisements to present

14    in this case other than 154 and 155?

15    A     I believe you had copies of the advertisements that

16    were in all of the dog show magazines in different spots

17    in the United States that we sent to dog show breed

18    specialties, that type of thing.

19    Q     So you are saying a dog show is an advertisement,

20    the dog show?

21    A     When you put an ad in their flyer and you pay for

22    it, that is what I would call it.

23    Q     Okay. So and that is what you were -- when you

24    mentioned to me 20, you were including those within the

25    20?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

49

1   A    Yes, sir.

2   Q    So I'm sorry if we had a little disconnect there.

3  I am going to take that out for a second.  What I am

4  trying to ask you is other than this national -- who does

5  this get circulated to?  You said it was about 75,000

6  people?

7   A    Yes, sir.

8   Q    Do you know how many of those are in Canada as

9  opposed to the U.S.?

10   A    They estimate that probably 60 percent of their

11  circulation is in the U.S.

12   Q    Okay.  So whatever 60 percent of 75,000 is, that is

13  the goal to reach those people.

14          What I am asking is other than this early 2004

15  advertisement, did OPI ever run another advertisement in

16  a, let's call it, a national magazine?

17   A    No, they did not.

18   Q    So that was the only one?

19   A    Yes.

20   Q    And 155 is -- is that something in your mind you

21  count as an advertisement, or it is a product review?

22   A    It is a product review.  Still gets you advertising

23  space in front of the consumer.

24   Q    So when you told me 20, you were talking about

25  these advertisements that you put in brochures -- I'm

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

50

1    sorry -- in these dog show brochures?

2    A      They have magazines with the dog shows, and you buy

3    advertising in those.  Yes.

4    Q      You are talking about local dog shows; right?

5    A      All over the U.S.  Texas, Minnesota, California,

6    Arizona.

7    Q      But when it is a -- let's take the one in Texas.

8    When you go to this dog show in Texas, is this a dog show

9    where people come from all over the world, or are you

10   saying this is a dog show where people from Texas come

11   to?

12   A      General rule on each show is different.  I would

13   say radius of 500 miles probably would be a good

14   estimate.

15   Q      So isn't it true that as of the time of your

16   deposition in this case, OPI had not placed an ad in the

17   last three years, that means '06, '07, '08?

18   A      I think we did dog shows in '06, possibly into '07.

19   I am not positive of that.

20   Q      I would like to read to you from Page 90 of your

21   deposition, Lines 4 to 11:

22   "Q  When was the last time that Optimal Pets, Inc. placed an

23   ad in a magazine or publication?

24   "A  Don't know.  I would have to look through all those that

25   we provided for you.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

51

1    "Q  Have you placed any ads for Optimal Pets in the last

2    three years?

3    "A  Without looking, I can't be sure, but I doubt it."

4    Q    So, Mr. Garmon, just true or false, the advertising

5    that you did was all done early in this cycle of 2004,

6    2005 as opposed to in later years?

7    A    True.

8    Q    So I want to talk to you a little bit about trade

9    shows.  Who is Sue Friley?

10   A    Sue Friley works for Garmon Corporation.

11   Q    And one of her duties was to go to -- one of her

12   duties was to go to trade shows; right?

13   A    Yes.

14   Q    And her duties were to go to trade shows for the

15   Garmon Corporation?

16   A    Well, for Garmon Corporation and for OPI at some

17   shows.

18   Q    So she was wearing two hats sometimes?

19   A    Yes.

20   Q    And when she wore those two hats, her trips, those

21   expenses and stuff, those were really paid by the Garmon

22   Corporation; right?

23   A    Yes.

24   Q    Is so isn't it true that OPI attended some trade

25   shows in 2004, 2005 and possibly in 2006?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

52

```
1    A    Yes.  Yes.

2    Q    And as far as you can recall, they did not

3    attend -- OPI did not attend trade shows in 2007 or 2008;

4    right?

5    A    I don't believe so.  No.

6    Q    So you agree with me on that one?

7    A    Yes.

8    Q    We are getting there, Mr. Garmon.  Sorry, we are

9    almost done.

10            So let's talk a little bit about puppy packs.

11   The puppy packs were something that were actually paid

12   for by the Garmon Corporation; right?

13   A    Yes.  Some times in the early days the printing

14   might have been done at Genesis, but for the most part,

15   yes.

16   Q    Okay.  And you don't really -- you never kept any

17   records of who you sent the puppy packs to?

18   A    No, we did not.

19   Q    Okay.  Way back when, when you formed the company

20   OPI in the year 2004, did you have an attorney help you

21   with that process of forming the company?

22   A    Yes, I did.

23   Q    And did you have an attorney help you kind of come

24   up with the name and stuff like that or preserve the name

25   or put the name in the corporate minutes or whatever?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

53

1  A      Put the name in the corporate book, yes.

2  Q      And back in '04 when you were doing all that, did

3  you think it was reasonable for you to rely on your

4  attorney's advice?

5  A      As I said before, I do some searching myself, and

6  then more searching for the attorney.   Yes.

7  Q      Well, when you hire an attorney to do something,

8  you tend to rely on your attorney; right?

9  A      Yes.

10  Q      Two topics to go, then we are done.  So I want to

11  talk a little bit about the market.  Because please

12  correct me if I am wrong, but I thought you said

13  yesterday that at some point in time in '06 or '07, OPI

14  was starting to sell to health stores and pet stores; is

15  that true?

16  A      Yes.

17  Q      Okay.  Do you agree with me that once you start

18  doing that, you are now no longer in the pet professional

19  market only?

20  A      Yes.

21  Q      And is it also true that at some point in time, OPI

22  started to do direct sales?

23  A      They did from the beginning if a consumer called

24  us, we would sell directly to them.

25  Q      Okay.  So your -- you are okay.  OPI is okay if you

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

54

```
1    get a phone call, hey, I heard about you guys, I am just
2    a regular old consumer, and I want to buy product from
3    you, you would be okay with that?
4    A      Yes.
5    Q      Okay.  Now, here is what I don't understand.
6            And I think you touched on it in your
7    examination yesterday.  I am now asking you questions
8    about Garmon Corporation, not OPI, but the Garmon
9    Corporation sells to some big retailers; right?
10   A      Yes, they do.
11   Q      Petco, right?  Yes?  You need to --
12   A      Oh.  You want me to tell you?
13   Q      I just need you to instead of nod?
14   A      Yes, sir.
15   Q      Pet Smart?
16   A      Yes.
17   Q      And you actually mentioned Centinela Feed?
18   A      Yes.
19   Q      Now, when you are doing business with somebody like
20   a big company like a Petco or Pet Smart who makes their
21   bread and butter selling to retailers, they don't like it
22   if Garmon Corporation is selling to retailers also;
23   right?
24   A      Incorrect.
25   Q      Incorrect.  So they are okay with that?
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

55

1   A      They are okay with it if it is under a different

2   label name.  In other words, I can't sell Nutri-Vet into

3   Petco and sell Nutri-Vet direct to the retail consumers.

4   Q      Because and they -- and the reason you can't is

5   they would view that as though you are poaching their

6   customers?

7   A      Correct.

8   Q      And you would be biting the hand that feeds you and

9   that wouldn't be smart?

10  A      Right.

11  Q      So if you want to do direct sales, you kind of got

12  to do it indirectly; right?

13  A      That would be a good word for it, yes.

14  Q      Okay.  Let me have you look at 587, and I will

15  represent to you that I think we are almost done.

16  Q      All right.  Just for my own clarity, Garmon

17  Corporation is a member of the NASC; right?

18  A      Correct.

19  Q      OPI is not a member of the NASC?

20  A      That is correct.

21  Q      All right.  Not to spend a lot of time with this,

22  but I did show this in opening and I know you were here.

23         Do you agree with me that there is only

24  four zip codes in the United States where during this

25  five year period, OPI has surpassed a thousand dollars in

56

1    sales over these five years?

2    A     You assembled that.  I didn't.  So I will have to

3    assume that is correct.  But I thought I saw by your

4    chart, though, there was one other state, I think

5    California.

6    Q     You are right.

7    A     Okay.

8    Q     There was actually two other states.  There is

9    six states where over the five years, OPI broke a

10   thousand dollars, but when we looked at it by zip code,

11   we noticed that there are only four.  And I am wondering

12   if you ever broke it down by zip code?

13   A     No, sir.  Did not.

14   Q     Do you have any reason to quarrel with me on these

15   charts?

16   A     No, sir, did not.

17         MR. ISAACS:  Your Honor, can I take just 30

18   seconds to check my notes.

19         THE COURT:  Let me just tell the jury.  My thought

20   was that we would normally break in the area of 10:30 or

21   at the end of a witness, but any time somebody on the

22   jury wants to take a recess, just let me know, and we

23   will honor your request.  Right now, let counsel finish,

24   let Mr. Holley finish.

25   Q     BY MR. ISAACS: Okay.  Just so I am clear, on trade

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1                          CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  July 11, 2011

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Legal Tabs Co. 1-800-322-3022

Recycled    Stock # R-EX-5-B

**EXHIBIT 8**

# OPI Market Share

$$\frac{\$5,428 \text{ OPI Best Year}}{\$700,000,000 \text{ Market Size 2008 } \text{[1]}} = 0.0008\% \text{[2]}$$

**Notes**

> 1 -  Garmon & Bookout testimony

> 2 -  Eight ten thousandths of one percent

1. Sales

2. Growth Trends

3. Sales Ratio

4. Advertising

Legal Tabs Co. 1-800-322-3022

Recycled     Stock # R-EX-5-B

**EXHIBIT 9**

**Phil Brown**

| | |
|---|---|
| **From:** | Stephen M. Nipper [stephen@dykaslaw.com] |
| **Sent:** | Thursday, April 17, 2008 11:12 AM |
| **To:** | Phil Brown |
| **Subject:** | trademark searching |
| **Attachments:** | Search Report.2008.04.17.5 different trademarks.pdf |

Dr. Brown:

Trademark search results attached for: OPTIMAL PET, NATURE'S PET, VIPS (Very Important Pet Supplements), PERFECT CHOICE PET SUPPLEMENTS, ACTIVE PET.

Best regards,

Stephen M. Nipper
**Registered Patent Attorney**
nipper@dykaslaw.com

Dykas, Shaver & Nipper, LLP (http://www.dykaslaw.com)
**Patents, Trademarks, Copyrights, Trade Secrets, Licensing and Litigation**
1403 W. Franklin St.
P.O. Box 877
Boise, ID 83701-0877
Phone: (208) 345-1122
Fax: (888) 388-6035

[note: I usually check my e-mail every few hours. I typically respond to the e-mails I receive within 24 hours.]

###############################
DO NOT read, copy or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee. If you have received this communication in error, please call us immediately at (208) 345-1122 or 1 (877) 611-1122 (toll free) and ask to speak to the sender of the communication. Also, please e-mail the sender and notify the sender immediately that you have received the communication in error.
###############################

1

NVET_004439

EXHIBIT 547-1

# DYKAS, SHAVER & NIPPER, LLP

| | | |
|---|---|---|
| REGISTERED PATENT ATTORNEYS<br>FRANK J. DYKAS<br>ROBERT L. SHAVER<br>STEPHEN M. NIPPER<br>ELIZABETH H. SCHIERMAN | PATENT ♦ TRADEMARK<br>COPYRIGHT ♦ INTERNATIONAL<br>LITIGATION ♦ LICENSING | (208) 345-1122 TELEPHONE<br>(208) 345-8370 FACSIMILE<br>(877) 611-1122 TOLL FREE<br><br>WWW.DYKASLAW.COM |

April 17, 2008

CONFIDENTIAL
Via e-mail only

Dr. Phil Brown
Nutri-Vet, LLC
495 N. Dupont Avenue
Boise, ID 83713

      Re:    Trademark Searches: OPTIMAL PET, NATURE'S PET, VIPS (Very Important Pet Supplements), PERFECT CHOICE PET SUPPLEMENTS, ACTIVE PET SUPPLEMENTS
      Our File:  NVET400

Dear Dr. Brown:

      I have completed a trademark search for the above proposed trademarks (to be used on nutritional supplements for animals).

## SCOPE OF THE SEARCHES

      The search covered federal trademarks, including the Principal and Supplemental Registers, marks registered in each of the 50 states, and common law (unregistered) uses of the mark. The trademarks and several variations of the trademarks were searched.

      Only the most relevant trademarks found in the search are discussed below.

## SEARCH RESULTS

### I.    OPTIMAL PET

      1.     OPTIMAL NUTRITION™. 78/606190. Goods: pet treats. Abandoned.

      2.     THE HALO DIFFERENCE. HOLISTIC CARE. OPTIMAL HEALTH.™. 77/383907. Goods: vitamin and food supplements for pets. Owned by "Halo, Purely for Pets, Inc." Pending application.

      3.     THE RIGHT CAT.THE RIGHT FOOD.OPTIMAL HEALTH.™ 76/663837. Animal activated cat feeders. Pending application.

---

P.O. BOX 877 ♦ BOISE, IDAHO 83701-0877
1403 W. FRANKLIN STREET ♦ BOISE, IDAHO 83702

CONFIDENTIAL INFORMATION
SUBJECT TO PROTEJCTIVE ORDER

NVET_000234

## EXHIBIT 547-2

Nutri-Vet, LLC
April 17, 2008
Page 2

4.      OPTIDOG®. 3,184,071. Goods: veterinary preparations, fodder additives (medicated), medicated detergents, disinfectants, pharmaceutical vermicides/repellants. Registered.

5.      OPTI-COOK™. 77/083409. Goods: pet food. Owned by Cargill. Pending application.

6.      OPTIFIT™. 77/373979. Goods: pet food. Owned by Nestle. Pending application.

7.      **Opti✦PLUS**®. 2,504,338. Goods: pet food. Owned by Nutreco. Registered.

8.      OPTICHOICE®. 2,101,441. Goods: dog/cat food. Owned by Nutro Products. Registered.

9.      _Optimum_ NATURE'S RECIPE®. 2,282,798. Goods: pet food. Owned by Del Monte. Registered.

10.     OPTIMUM NATURE'S RECIPE®. 2,278,903. Goods: pet food. Owned by Del Monte. Registered.

11.     **O·N·E**®. 1,529,934. Goods: dog food. Owned by Purina. Registered.

It is my opinion that the mark OPTIMAL PET is probably available for registration as a federal trademark. There are a number of other OPTI* trademarks on related goods, but that fact can work in our favor (there is not one super strong OPTI* trademark blocking everyone else). Of course, the converse is true…if others can use OPTI* in their trademarks, OPTIMAL PET will have a narrower range of protection.

**II.    NATURE'S PET**

1.      **Nature's Answer Pets**®. 2,753,888. Goods: dietary supplements for pets. Owned by Nature's Answer. Registered.

2.      NATURE'S PET®. 2,798354. Goods: non-medicated grooming preparations. Owned by The Stephen Co. Registered.

3.      NATURE'S PET RATION®. 2,483,418. Goods: dietary supplements for pets. Owned by Nature's Sunshine Products. Registered.

CONFIDENTIAL INFORMATION
SUBJECT TO PROTEJCTIVE ORDER

NVET_000235

**EXHIBIT 547-3**

Nutri-Vet, LLC
April 17, 2008
Page 3

---

It is my opinion that the mark NATURE'S PET is probably not available for registration as a federal trademark. I believe (but can not guarantee) that the Trademark Office would likely reject the trademark as being likely to cause confusion with one of the above registrations.

## III.   VIPS – Very Important Pet Supplements

1.  V.I.P. VERY IMPORTANT PET®. 3,124,533. Goods: pet stores and incentive award programs. Owner: Pet Supermarket, Inc. Registered.

2.  THE V.I.PET RESORT®. 2,689,485. Goods: kennels. Registered.

3.  VI PET™. 78/538407. Goods: incentive award programs/pet-related services. Owner: Cheryl Nauman. Pending, allowed, multiple SOU extensions filed.

4.   ®. (O&M ULTIMATE HOLISTIC BIOSYNERGISTIC VIP VERY IMPORTANT PET ALL NATURAL (and design)). 3,152,534. Goods: dog food. Owner: Owen & Mandeville Pet Products. Registered.

5.   ®. (VOTOYS "VERY IMPORTANT PET" V-I-P (and design)). 1,003,133. Goods: dog/cat toys. Owner: VO-Toys, Inc. Registered.

5.  VIP VITAMIN INFUSED PORTION™. 77/247373. Goods: multi-vitamin preparations. Owner: Michael Esposito. Pending, allowed.

6.   ®. 1,350,259. Goods: tick and flea powder. Owner: Wellmark Int'l. Registered.

It is my opinion that the mark VIPS (Very Important Pet Supplements) is probably not available for registration as a federal trademark. I believe (but can not guarantee) that the Trademark Office would likely reject the trademark as being likely to cause confusion with one of the above registrations (e.g., arguing that V.I.P. VERY IMPORTANT PET® is used on pet stores and your goods are sold in pet stores).

## IV.   PERFECT CHOICE PET SUPPLEMENTS

1.  PERFECT CHOICE®. 2,579,389. Goods: various groceries, including vitamins, calcium supplements, and herbal supplements. While none of these goods are directly similar, it is Kroger/Fred Meyer's store brand (didn't I see your product on the shelves there???). Registered.

CONFIDENTIAL INFORMATION
SUBJECT TO PROTEJCTIVE ORDER

NVET_000236

**EXHIBIT 547-4**

Nutri-Vet, LLC
April 17, 2008
Page 4

---

2.      PERFECT CHOICE™.  78/556566.  Goods:  various groceries.  Owner:  Big M Supermarkets (related to Kroger/Fred Meyer???).  Pending, allowed.

3.      PERFECT CHOICE®.  1,726,061.  Goods:  bird feed.  Registered.

It is my opinion that the mark PERFECT CHOICE PET SUPPLEMENTS is probably available for registration as a federal trademark.  Whether that causes issues with you and Fred Meyer is a separate issue for you.

## V.      ACTIVE PET SUPPLEMENTS

1.      ACTIVE K9®.  2,943,281.  Services:  mail order dog/pet supplies.  Owner:  Foster & Smith.  Registered on the Supplemental Register.

2.      PROACTIVE HEALTH™.  77/224071.  Goods:  pet food.  Owner:  Iams.  Pending, allowed.

3.      TRIM & ACTIVE®.  3,025,919.  Goods:  dog food.  Owner:  Owen and Mandeville.  Registered.

4.      ACTIVE CHOICE®.  2,765,387.  Goods:  pet food.  Owner:  Phoenix Intangibles.  Registered.

5.      PET ACTIVE WELLNESS ALLIANCE ™.  77/305732.  Services:  promoting the interests of pets/pet owners; veterinary consultation services.  Owner:  Iams.  Pending, allowed.

6.      ACTIVE LIFE PET PRODUCTS®.  2,276,772.  Goods:  animal feed.  Owner ALBC Acquisition, Inc.  Registered.

It is my opinion that the mark ACTIVE PET SUPPLEMENTS is probably available for registration as a federal trademark.

## CONCLUSION

Please let me know what additional information/advice you require.  If you would like to discuss, please do not hesitate calling.

Best regards,

/Stephen M. Nipper/

STEPHEN M. NIPPER
Registered Patent Attorney

CONFIDENTIAL INFORMATION
SUBJECT TO PROTEJCTIVE ORDER

NVET_000237

# EXHIBIT 547-5

Legal Tabs Co.  1-800-322-3022

Recycled    Stock # R-EX-5-B

**EXHIBIT 10**

Untitled Document

# Welcome to Pet Center



© 2008 Pinogy Corp./360Pet

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of the law firm of WYMAN & ISAACS LLP, and that on the date shown below, I caused service of a true and correct copy of the attached:

**NV'S AND VS' REPLY TO OPI'S OPPOSITION TO NV'S AND VS' RENEWED MOTION FOR JMOL POST TRIAL; NV'S AND VS' OPPOSITION TO OPI'S CROSS-MOTION FOR JMOL POST TRIAL; DECLARATION OF BRUCE ISAACS RE EXHIBITS AND TRANSCRIPT OF GARMON TRIAL TESTIMONY**

to be completed by:

_____     personally delivering
_____     delivery via Nationwide Legal Services
_____     sending via Federal Express or other overnight delivery service
_____     depositing for mailing in the U.S. mail with sufficient postage affixed thereto
_____     delivery via facsimile machine to fax no.
X_____    by E-Mail – PDF Format - I caused the foregoing document to be served by e-mail transmission, in PDF Format, to each of the interested parties at the e-mail address shown above.
X_____    electronic filing, and thereby delivery via e-mail to:

George L. Hampton, Esq.                    Marie Worden
Colin C. Holley, Esq.                       Law Clerk to the Honorable Marvin J. Garbis
HamptonHolley LLP                          United States District Court
2101 East Coast Highway, Suite 260         District of Maryland
Corona Del Mar, CA  92625                  101 W. Lombard Street
ghamton@hamptonholley.com                  Baltimore, MD  21201
cholley@hamptonholley.com                  marie_worden@mdd.uscourts.gov


Dated this 27th day of July, 2011


                                           /s/Bruce Isaacs
                                           Bruce Isaacs